[No. 9442.    Department Two.    April 13, 1912.]

THE STATE OF WASHINGTON, *Respondent*, v. PETER MILLER, *Appellant*.[1]

CRIMINAL LAW—EVIDENCE—CONFESSIONS—ADMISSIBILITY—DURESS. A confession is inadmissible as one obtained by duress, where it appears that the prosecuting attorney threatened the accused with a series of prosecutions which would culminate in cumulative sentences, unless he confessed, he was subjected to solitary confinement in a dark cell, and testified that he was subjected to severe personal violence, and was denied communication with an attorney or any person; especially in view of Rem. & Bal. Code, § 2611, making it a misdemeanor for an officer to refuse to permit such communications, or to subject a person to personal violence or threats for the purpose of inducing confessions.

CRIMINAL LAW—EVIDENCE—CONFESSIONS— DURESS — SECOND CONFESSIONS—PRESUMPTIONS. Error in the admission of confessions of a prisoner induced by threats, imprisonment in a dark cell, and personal violence, is not cured by evidence of another like confession, procured four days later, after removal from the dark cell, where there was no evidence that the influence of the duress and threats was removed at the time of the second confession; and the presumption of continuing influence must be overcome by clear, strong, and satisfactory evidence.

CRIMINAL LAW—EVIDENCE—INDUCED BY THREATS AND DURESS—ACCOMPLICES. The evidence of an accomplice in burglary will not be held inadmissible as induced by threats or promises, where the witness testified that it was not, and the evidence was given six months after the alleged threats and coercion of the witness by confinement in a dark cell; the strict rules governing confession of the prisoner on trial not applying.

Appeal from a judgment of the superior court for Pierce county, Easterday, J., entered December 14, 1910, upon a trial and conviction of burglary.    Reversed.

*Joseph M. Glasgow*, for appellant.

*John F. Murphy* and *Everett C. Ellis*, for respondent.

ELLIS, J.—On October 4, 1909, George F. Vanderveer, then prosecuting attorney for King county, filed an informa-

[1]Reported in 122 Pac. 1066.

tion against the appellant which, omitting formal parts, was as follows:

"He, said Charles Elliott alias Peter Miller, in the county of King, state of Washington, on the 26th day of April, A. D. 1909, the dwelling house of one Fred V. Fisher, the same being a building or place in which goods and valuable things were then and there kept for use and deposit, did then and there unlawfully, wilfully, feloniously and burglariously enter in the nighttime, with intent then and there to commit a felony or misdemeanor."

A plea of not guilty was entered, and on January 20, 1910, the cause was brought on for trial in Pierce county, Washington, on a change of venue. On January 28, 1910, the jury returned a verdict finding the appellant guilty of burglary as charged in the information. On May 23, 1910, the motion for a new trial was overruled. On December 14, 1910, judgment and sentence were pronounced, whereupon this appeal was taken.

The contest at the trial was waged mainly upon the admission of evidence of certain confessions of the appellant, and upon the admission of testimony of his confederate and accomplice, one Willis Taylor. The same matters are the principal grounds of contest here. The appellant contends that the confessions were made under duress, and that the testimony of the accomplice, Willis Taylor, was induced by fear and intimidation.

The confessions here involved, though relating to a different burglary, were procured in the same manner, and made at the same time, and as parts of the same conversations, as those involved in the case of *State v. Miller*, 61 Wash. 125, 111 Pac. 1053. A painstaking perusal of the evidence makes it plain that this case, so far as the confessions are concerned, cannot be distinguished from that. The respondent seeks to point a distinction in that in this case there were two confessions made by the appellant, the first to the captain of detectives Tennant alone, and the other some three or four days later to Tennant in the presence of George F. Vander-

veer, prosecuting attorney of King county, and Fred C. Pugh, prosecuting attorney of Spokane county. We find, however, that the only material differences in the evidence as to the two confessions in the two cases is found in the fact that the prosecuting attorney of Spokane county, in addition to Vanderveer and Tennant, was called as a witness at the trial of this case and testified as to what was said by the appellant in the last of these conversations; whereas, in the other case, the state's evidence on that point was confined to that of Tennant and Vanderveer.

The evidence shows that the appellant was arrested on July 22, 1909, and was placed in a dark cell and kept there for a period of about eight days, during which time permission to consult an attorney was denied him. The appellant testified that the prosecuting attorney during this time threatened him with prosecutions for many different crimes which would entail cumulative sentences. This was, in substance, admitted by the prosecuting attorney. The appellant in this case, as in the other, also testified that, in addition to being placed in the dark cell, he was beaten with a bludgeon, kicked, and otherwise maltreated by the captain of detectives, Tennant, and threatened with other dire punishments if he did not confess. All of these things were denied by Tennant, but it is conceded that the appellant was confined in the dark cell until he confessed. Tennant, in effect, admitted that though he did not give the order for this confinement, it was the result of his suggestion. It is plain that the purpose was to keep him there until he confessed, and that the confession was the result of this confinement.

In passing upon the admissibility of the confession, and on practically the same evidence as to its procurement, this court in the prior case, *State v. Miller, supra*, said:

"According to the testimony of the appellant, the prosecuting attorney had threatened him with prosecution for divers and sundry crimes which would work cumulative sentences, in addition to other harsh treatment which it was claimed the appellant received at the hands of the prosecut-

ing attorney. It was conceded by the prosecuting attorney that he had visited this appellant more than once at his cell, and once in company with the captain of the detectives, and with the prosecuting attorney. of Spokane county. All the charges of cruelty were indignantly denied by the prosecuting attorney, but in answer to a question propounded by the appellant, if he had had such a talk with him, he did say this: 'Under the laws of this state you could be charged with all these burglaries and your sentence would be tacked one on the other. I did tell him that. I suppose that was a sort of an implied threat. Otherwise I never said a word in any threatening manner.' The prosecuting attorney was there for a purpose. The evident purpose was to obtain a confession .from this appellant, and we think, under his own admission, that the threat which he made, or the implied threat as he terms it, was sufficient to render the confession made a confession obtained by duress. The appellant was confessedly a bright man and would understand, and it was no doubt intended that he should understand, that these cumulative sentences would follow if he did not confess. This is all that need be said so far as the testimony of the prosecuting attorney is concerned.

"The appellant also testified that he was thrown into what he calls the 'dark hole' in the jail; that he was maltreated, beaten with a bludgeon by the captain of the detective force, Tennant, and threatened with the most appalling punishments if he did not confess what he knew about this alleged burglary. The details of this alleged punishment and threats are too horrible and disgusting to set forth here. The only question is as to the truth of the statements made. These allegations of threats and of barbarous treatment were denied by Captain Tennant, he claiming that he had never struck or abused the appellant, excepting once when the appellant attempted to assault him. Captain Tennant denied that he had ever put the appellant into the black hole or black cell; but it is conceded that appellant was confined in the black hole, and that he was there with the knowledge of Captain Tennant. While Tennant probably did not put him there, as naturally he would not, appellant was evidently ordered there by him, or if not by him, by some one in authority at the jail. It is not alleged or claimed anywhere that it was necessary to put appellant in this iron cell

for the purpose of preventing an escape. The whole testimony shows conclusively that it was done for the purpose of extracting a confession from him."

We find nothing in the evidence now before us warranting a modification of the above language. The first confession to Tennant alone was made on the evening of the seventh or eighth day of appellant's confinement in the dark cell, and the last confession was made on August 2, 1909. It is thus clear that the second confession followed the first at an interval of not more than four days. While Tennant, Pugh and Vanderveer all testified that this last confession was to all appearances made voluntarily, even boastfully, the evidence of Tennant and Vanderveer at the other trial was to the same effect. In both cases the appellant denied that any confession was voluntarily made by him.

Respondent's contention is that, notwithstanding the inadmissibility of the evidence of the prior confession, the later one being voluntary and substantially the same as the first, cured any error in the admission of evidence as to the first. It is argued that the fact that some three or four days had elapsed since the removal of the appellant from the dark cell to a light one, which is the only change in his treatment claimed by the prosecution, was evidence of the removal of all duress, and the last confession was therefore voluntary and beyond any improper influence which may have induced the first. Many cases are cited in which, on facts materially different from these, the courts have held evidence of a second and clearly voluntary confession admissible even where a prior confession was procured by inducements rendering evidence as to such prior confession inadmissible. In a few cases it has been held that proof of the later voluntary admission cured error in admitting evidence of the first confession. But in most of these cases the second confession was made to other persons, and when the custody and control of the person extorting or inducing the first confession was wholly removed. As examples, the following cases may be

cited: *Andrews v. People,* 33 Colo. 193, 79 Pac. 1031, 108 Am. St. 76; *State v. Willis,* 71 Conn. 293, 41 Atl. 820; *Paris v. State,* 35 Tex. Civ. App. 82, 31 S. W. 855; *State v. Foster,* 136 Iowa 527, 114 N. W. 36; *Whitney v. Commonwealth,* 24 Ky. Law 2524, 74 S. W. 257.

These cases are not controlling upon the facts here presented. As we have seen, one of the chief inducements to the original confession was the fear of the threatened cumulative sentences, which threat was admitted by the prosecuting attorney. There is no evidence that that fear was removed at the time of the second confession. Moreover, the appellant was still under the control of Tennant and the prosecuting attorney, and knew that he could be again placed in the dark cell from which he had been so recently removed, if he refused to talk. Evidence of both conversations was before the court in the former case, and the admission of all evidence of the confessions was there held error. The true rule as to the admissibility of later confessions is stated in 1 Greenleaf on Evidence (16th ed.), pages 360, 361, § 221, where it is said that, if it appears to the satisfaction of the court that the influence of the threats or promises was "totally done away with before the confession was made, the evidence will be received." After illustrating by examples, the author continues: "In the absence of any such circumstances, the influence of the motives proved to have been offered will be presumed to continue and to have produced the confession, unless the contrary is shown by clear evidence; and the confession will therefore be rejected." The same rule is stated in Underhill on Criminal Evidence (2d ed.), § 130, p. 253:

"The influence of the threat or promise under which the first confession has been made and because of which the confession will be excluded will be presumed to continue to the time of a subsequent confession unless it is affirmatively shown to have been removed. This presumption must be overcome before the later confession can be received as evi-

dence. And evidence to overcome or rebut it must be clear, strong and satisfactory."

See, also, Abbott's Trial Brief, Criminal Causes, p. 451.

In the case here the evidence was wholly insufficient to overcome the presumption of continuing influence. On a careful reconsideration of the whole evidence, we cannot, in view of the statutes governing the subject, modify the decision on this point in the former case. The statutes are as follows:

"(5) No officer or person having the custody and control of the body or liberty of any person under arrest, shall refuse permission to such arrested person to communicate with his friends or with an attorney, nor subject any person under arrest to any form of personal violence, intimidation, indignity or threats for the purpose of extorting from such person incriminating statements or a confession. Any person violating the provisions of this section shall be guilty of a misdemeanor." Rem. & Bal. Code, § 2611.

"The confession of a defendant made under inducement, with all the circumstances, may be given as evidence against him, except when made under the influence of fear produced by threats; but a confession made under inducement is not sufficient to warrant a conviction without corroborating testimony." Rem. & Bal. Code, § 2151.

It is manifest that the first of the above quoted statutes unqualifiedly prohibits the kind of treatment which was admittedly imposed upon the appellant in this case. It is admitted that he was thrown into the dark cell and refused communication with any one, even an attorney, until he had confessed, and was also threatened with cumulative sentences. The confession was procured in direct violation of this statute. The last quoted statute expressly excepts from those confessions which may be given in evidence any confession made under the influence of fear produced by threats, and the plain terms of this section were violated in the admission of evidence of these confessions. *State v. McCullum*, 18 Wash. 394, 51 Pac. 1044. The legislature having expressly prohibited the procuring of confessions as this was procured,

and having declared as a positive rule of evidence that a confession so procured shall not be admitted in evidence, it is not within the province of the courts to override the statute and declare such evidence admissible.

The objection to the testimony of the accomplice, Willis Taylor, presents a wholly different question. No evidence of any confession by him was offered. He testified directly to the facts. There is a clear distinction between evidence of a confession and evidence in chief. He testified that his testimony was not induced by threats fear or promises, and that the only ill treatment he had ever received was that he was placed in a dark cell for two days when first arrested on July 22, 1909, and that he was never threatened, beaten or maltreated in any other way. His testimony in this case was given some six months later. In the former case we were inclined to hold that his testimony was inadmissible as being induced by fear and coercion, but a careful review of the entire evidence touching this question, and a consideration of the length of time which had elapsed since any act of coercion, now convinces us that at the time he testified in this case he was not under such duress as to render his testimony inadmissible. True, he was still held in confinement, but that was necessary in order to insure his attendance at the trial. The case is readily distinguishable on the facts from that of *State v. Montgomery*, 56 Wash. 443, 105 Pac. 1035, 134 Am. St. 1119, where the evidence made it too plain for cavil that the witness was under the influence of threats at the very time when she testified. We now hold that it was not error to submit the testimony of the accomplice, Taylor, to the jury, under proper instructions to consider the manner in which it was procured, and with proper caution as to the testimony of an accomplice as bearing upon its credibility. His testimony was not subject to the same strict rules governing confessions and admissions of the prisoner on trial. *State v. Geddes*, 22 Mont. 68, 55 Pac. 919; *State v. Magone*, 32 Ore. 206, 51 Pac. 452; *State v. Varnado*, 126 La. 732, 52 South. 1006;

*State v. Shelton*, 223 Mo. 118, 122 S. W. 732; *Barr v. People*, 30 Colo. 522, 71 Pac. 392; *State v. Riney*, 137 Mo. 102, 38 S. W. 718; *People v. O'Neill*, 5 N. Y. Crim. 302.

Our conclusion on the two points discussed renders it unnecessary to consider the other assignments of error. The judgment is reversed, and the cause remanded for a new trial.

DUNBAR, C. J., CROW, and MORRIS, JJ., concur.