[No. 11479. Department Two. February 21, 1914.]

THE STATE OF WASHINGTON, *Respondent*, v. PETER MILLER, *Appellant.*[1]

CRIMINAL LAW—APPEAL—HARMLESS ERROR. Error cannot be predicated on the admission of evidence where the same fact was established by other evidence admitted without objection.

SAME. Error cannot be predicated on allowing a question which had previously been answered without objection.

CRIMINAL LAW — EVIDENCE — IDENTITY — COMPETENCY. Upon the question as to the identity of accused, it is competent for a witness to give her "best judgment;" the weight being for the jury.

BURGLARY—EVIDENCE—POSSESSION OF TOOLS. In a prosecution for burglary, it is competent for a witness to describe articles found in the room of the accused and to state that they were burglars' tools.

SAME—EVIDENCE—ALIASES. In a prosecution for burglary, it is competent to show that the accused and his confederate registered under assumed names while occupying a room in which burglars' tools were found.

WITNESSES—PRIVILEGED COMMUNICATIONS. Upon a prosecution of one M for burglary, communications between him and an attorney are not privileged, where they occurred one month previous to M's arrest, when M employed the attorney to secure the release of one T, his confederate, held on a general charge of suspicion, and no suggestion was made that the attorney's employment was on behalf of M or that M was under suspicion.

CRIMINAL LAW—APPEAL—RECORD—STATEMENT OF FACTS—AMENDMENT—CONCLUSIVENESS. Where an amendment to the statement of facts was allowed showing that an answer was stricken, it is conclusive on the appellate court, and error cannot be claimed in failing to strike the answer.

CRIMINAL LAW—TRIAL—EXAMINATION OF WITNESSES—DURESS. Accused is not entitled to object to a witness for the state on the ground of duress, or to a preliminary examination to determine whether the witness was under duress, the right of cross-examination being sufficient.

CRIMINAL LAW—APPEAL—HARMLESS ERROR—EVIDENCE. Error cannot be predicated on the exclusion of impeaching questions, where the impeachment was fully covered by affidavits and other papers placed before the jury.

[1]Reported in 138 Pac. 896.

CRIMINAL LAW—TRIAL—INSTRUCTIONS — RECALLING JURY. Where two of the instructions were overlooked, the court may recall the jury, in the presence of the accused, and read the instructions, explaining that they had been overlooked.

CRIMINAL LAW—TRIAL—CONDUCT—HANDCUFFS. Error cannot be predicated on the fact that accused was led to and from court with handcuffs, where the fact was not known to the jury and he appeared at the trial at all times with no fetters upon him.

JURY—COMPETENCY—HUSBAND AND WIFE. The fact that two of the jurors on a panel were husband and wife does not render the verdict illegal.

CRIMINAL LAW—HABITUAL CRIMINALS—SENTENCE—STATUTES—IMPLIED REPEAL. Rem. & Bal. Code, §§ 2177-2180, relating to habitual criminals and providing that one convicted of being such shall be punished by a sentence of not less than double the time of the sentence upon the former conviction, was not impliedly repealed by the indeterminate sentence act of 1907 (Id., §§ 2193, 8548 *et seq.*), providing a new method of giving sentence, in that, instead of fixing a definite time, the sentence should be for not more than the maximum nor less than the minimum term provided by law; hence where the former sentence was ten years, a sentence of not less than 20 years and not more than 40 is proper on conviction of being an habitual criminal.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered April 19, 1913, upon a trial and conviction of burglary and of being an habitual criminal. Affirmed.

*Joseph M. Glasgow*, for appellant.
*John F. Murphy* and *Everett C. Ellis*, for respondent.

MORRIS, J.—Appellant, having been convicted of the crime of burglary, appealed to this court, alleging error in the admission of evidence of certain confessions. The judgment was reversed upon this ground in *State v. Miller*, 68 Wash. 239, 122 Pac. 1066, and a new trial ordered. Appellant, having been tried and convicted the second time upon the burglary charge, and under a supplemental information having been convicted under the habitual criminal act, has again appealed.

Upon this appeal, ninety-eight assignments of error are made, eighty-two of which are to the admission and rejection of testimony, the remainder relating to instructions, various motions and demurrers, and an attack upon the habitual criminal act of 1903. It is manifest we cannot here review all these assignments, as to do so would prolong this opinion to a prohibited length. To give a proper understanding of the errors predicated upon the rulings of the lower court in the admission and rejection of testimony would ofttimes necessitate quoting much of the record, so as to show the context and the relation of the testimony to other admittedly relevant and admissible matter. It is sufficient to say that the record has been carefully read and consideration given to each alleged error, and in no instance can we say we find any ruling that suggests any prejudicial effect against appellant. We will, however, refer to some of the alleged errors upon which appellant lays great stress as fairly illustrating the character of the evidence objected to.

The burglarized house belonged to Fred Fisher; and Mrs. Fisher, over appellant's objection, was permitted to testify that, about three weeks subsequent to the burglary charged in this information, the house was entered a second time, and some silverware taken that completed a set part of which had been taken the first time. There was other testimony along this line, to which no objection was made except to the use of certain words used by Mrs. Fisher as "conclusions." Willis Taylor, another witness for the state, also testified, without objection, that he and Miller committed both the first and second burglary, and gave as a reason for the second burglary that the "fence," where the first lot of silverware had been taken, made some objection because it was not a complete set, and that he and Miller went back to the Fisher home the second time to get the remainder of the set. Taking the record as a whole, we can see no error of which appellant can now complain.

Mrs. Fisher also testified, without objection, that, about a month previous to the first burglary, a man came to her home and asked for a certain number, and that there was no such number on the street. Subsequently she was asked if there was any such number on the street, to which objection was made as being irrelevant and too remote. In view of the previous answers of the witness, we can see no error in overruling the objection. Mrs. Fisher was then asked to give her best judgment as to whether appellant was the man who made this inquiry, to which objection was made that "best judgment" was not sufficient; that the witness must say "it is the man, or the testimony is absolutely incompetent." The testimony was competent. Counsel's objection went to its weight, which was for the jury. Certain other witnesses were asked to describe certain articles found in Miller's room, and as to whether or not these articles were burglars' tools. The testimony was competent. Objection was also made to questions answering which it was shown that, while occupying the room where these various articles were found, Miller had registered himself as "Charles Brenner," and Willis Taylor as "William Rose." We see no error.

Eight assignments of error are predicated upon the testimony of T. D. Page, given on behalf of the state. Page was permitted to testify, over objection, that he was an attorney, and that Miller had come to him and employed him to obtain Taylor's release from jail about a month previous to Miller's arrest on this information, and as to certain statements Miller then made. This was objected to upon the ground that it was a confidential communication between attorney and client. Page testified that he had never been employed by Miller to act as his attorney in any matter; that the only employment at this time was that Miller employed him to act in behalf of Taylor and obtain his release from jail where he was held under a general charge of suspicion. The fact that this was a month prior to the arrest of appellant on this charge seems to us sufficient to establish the fact, as

contended by Page, that he was not acting as Miller's attorney, and that no suggestion was made of any need of his professional services in behalf of Miller, and that the professional relation was created in behalf of Taylor and not Miller. Under these facts, it is clear that any communication made by Miller was not within the rule of privilege. There was nothing to show that Miller was seeking in any way to obtain any professional advice from Page to aid him in defeating any charge made against him in connection with the Fisher burglary. So far as he then knew, no suspicion was directed against him as the perpetrator of these crimes. There was no necessity for seeking his professional aid. Neither was the conversation directed to the Fisher burglary. It related to matters that, in the light of what had transpired in the two Fisher burglaries, made it relevant testimony.

"A communication cannot be considered as privileged because made in professional confidence, unless the person to whom it is made is acting for the time being in the character of legal adviser of the person who makes it. The communication must also be made for the purpose of obtaining professional advice or aid in the matter to which the communication relates." *Flack's Adm'r v. Neill*, 26 Tex. 273.

In *Earle v. Grout*, 46 Vt. 113, it is said:

"The communication, to be privileged, must have been made to the witness confidentially, as his counsel; the *relation* of counsel and client must have existed at the time, and the communication made for the purpose of obtaining counsel, advice, or direction, in regard to his legal rights. It is not required that the witness should have been retained generally in the matter upon which the party was seeking advice; but he must have been counsel upon the subject upon which the conference was had, and the communication made to him as such."

In 23 Am. & Eng. Ency. Law (2d ed.), 58, the rule is thus stated:

"In order that a communication to an attorney may be privileged it is absolutely essential that the relation of attorney and client should have existed between him and the

person making the communication, with reference to the matter to which the communication relates."

In *Hartness v. Brown*, 21 Wash. 655, 59 Pac. 491, and *Williams v. Blumenthal*, 27 Wash. 24, 67 Pac. 393, the rule is said to refer to information acquired by an attorney in the course of his employment by a client, relating to the subject thereof and concerning the transaction between them. Wigmore gives it as an essential that the communication must be relevant to the advice sought, in order to make it privileged. Wigmore, Evidence, § 2292. The admissibility of this testimony is also supported by 1 Greenleaf, Evidence, §§ 239 and 240; Wharton, Criminal Evidence, § 497; Underhill, Criminal Evidence, § 174.

During the cross-examination of Page by Miller himself, Page had been interrogated as to a statement made to a newspaper man. He was then asked concerning this statement: "Why did you do it?" Answer: "I know you to be an unscrupulous thief and a murderer. You told me that yourself. You told me you killed MacMahon." Miller then moved to have the answer stricken. The record here shows this: "The Court: Objection sustained and answer stricken. Mr. Miller: I object to any statement of the witness. The Court: He has answered something that is not asked. Confine yourself to answering the question. Don't argue with the witness." That part of the court's ruling appearing as, "and answer stricken," was allowed by the court as an amendment to the statement of facts proposed by appellant, and over appellant's objection. Appellant now says this was error. We must accept the statement of facts as certified by the lower court as showing what was said and done. The claim of error is not well taken.

The confession of appellant and Willis Taylor, referred to in the opinion on the last appeal, was not used at this trial, but Willis Taylor was produced as a witness by the state. Counsel for appellant immediately objected to any testimony from Taylor, and demanded a preliminary examination for

the purpose of showing duress. This he was denied, and appellant now says such ruling was erroneous. We know of no rule that permits a defendant to object to a witness offered by the state upon the ground of duress, or that gives any right to demand a preliminary examination for the purpose of ascertaining whether or not the witness is under duress. Neither is there anything in *State v. Montgomery*, 56 Wash. 443, 105 Pac. 1035, 134 Am. St. 1119, which aids appellant in his contention. All that was there said was that evidence obtained by duress cannot sustain a conviction. We have no desire to depart from such a rule. It was the basis of the reversals of the judgments against this appellant in *State v. Miller*, 68 Wash. 239, 122 Pac. 1066, and *State v. Miller*, 61 Wash. 125, 111 Pac. 1053, Ann. Cas. 1912 B. 1053. In this case, however, no attempt was made to offer any confession. Taylor was offered as any other witness for the state, and as was said in the last *Miller* case, "There is a clear distinction between evidence of a confession and evidence in chief." Appellant was entitled to the same method of attacking the testimony of Taylor as that allowed in the case of any other witness, but we know of no rule that would give him any additional privilege in this regard. No rule of trial procedure permits any party, when an adverse witness is offered, to stop the examination in chief in an attempt to show the testimony is not voluntarily made. That is one of the purposes of cross-examination, and in this case it might be added that the court was most liberal in the length he permitted appellant to go on the cross-examination of Taylor in the endeavor to show that he was under duress and that his testimony was not voluntarily given. In the last *Miller* case, it was said that it was not error to submit the testimony of Taylor to the jury under proper instructions as to the testimony of an accomplice as bearing upon its credibility. The testimony on that trial was given six months after the alleged duress; that on this trial was given three years later. In the meantime, Taylor had been a free agent;

had talked freely with representatives of both the state and
the appellant. Counsel for appellant had procured from
him an affidavit touching the claim of duress, and had pre-
pared questions and answers favorable to the appellant for
the use of Taylor, upon the belief that Taylor would appear
as a witness for the defense. All of this matter—the affidavit,
the prepared questions and answers—was submitted to
the jury and was before them in their determination of the
credibility of Taylor and the weight to be given his testi-
mony. Other errors are alleged in connection with the ex-
amination of Taylor. Without specifically referring to
them, we overrule the claim of error. In each instance, what-
ever was sought to be elicited by the question was fully cov-
ered in the affidavit and proposed questions and answers sub-
mitted to the jury at request of appellant, and the jury
were fully apprised as to all the conflicting statements made
by Taylor at all times. The questions to which the court
sustained objection were in the nature of impeaching ques-
tions as to statements made by Taylor to various witnesses.
The matter covered by the statements was fully covered by
the affidavit and prepared questions and answers, and get-
ting it before the jury once was enough. So that, even
though we should be of the opinion that the court should
have ruled otherwise in the first instance, the appellant be-
fore the close of the trial obtained the full benefit of any con-
tradictory statements Willis Taylor might have made.

Complaint is next made of eight instructions. Appellant
points out no vice in these instructions except to say they
do not correctly state the law. We have read them all and
can discover no error in them. Two of these instructions
were overlooked by the court when charging the jury. After
noticing this, the jury were called into court after notice
was given to the counsel for appellant and, without any com-
ment by the court except to say he had by oversight failed
to give them along with the others, the instructions were read

to the jury, to which appellant took exception. We find no error in this. It was the duty of the court to fully instruct the jury as to the law of the case; and if, in the opinion of the judge, he had omitted anything which in his judgment would be of value to the jury in reaching a conclusion, we see no error in calling them from the jury room and so instructing them.

Error is also predicated upon the fact that, on the first day of the trial, appellant was led to and from the court room with handcuffs. From the showing made in affidavits touching this matter, used upon the motion for a new trial, we do not think this fact was known to the jury. The state also made a showing that appellant had broken jail and escaped custody on two different occasions, and that he was then under indictment charging him with assault with intent to kill. These facts distinguish the case from *State v. Williams*, 18 Wash. 47, 50 Pac. 580, 63 Am. St. 869, 39 L. R. A. 821, where it was held reversible error to keep the defendant and two of his witnesses in manacles during the trial without any necessity appearing for such action. Appellant is not within the reasoning of the *Williams* case, in that he appeared at all times during his trial with no fetters upon him. Neither can we say no reason appears why the police officials should not regard Miller in the light of an habitual criminal, in view of this record.

The jury having returned a verdict of guilty, a supplemental information was then filed charging appellant with being an habitual criminal, upon which appellant was tried and convicted. Upon this trial, it appears that two of the jurors were husband and wife. After the jury had been impaneled, appellant asked to have the jury discharged because of this fact, and alleges error upon the court's refusal to do so. We know of no reason why the presence of a husband and wife upon the same jury would make such a panel an unlawful one or render illegal any verdict returned by such a jury. The error is overruled.

Complaint is next made against the supplemental information, upon the ground that the habitual criminal act of 1903 was repealed by implication by the indeterminate sentence law of 1907. Laws 1907, p. 341 (Rem. & Bal. Code, §§ 2193, 8548 *et seq.*). We can find nothing in the latter act that suggests any intention to repeal the former one. The act of 1903 (Rem. & Bal. Code, §§ 2177-2180) defined habitual criminals and provided that any one convicted of being such should be punished by a sentence of not less than double the time of the sentence upon the former conviction. It will be seen the law thus fixed a minimum, but not maximum, period. The act of 1907 in no manner changed the punishment theretofore fixed in the law for any crime. It simply provided for a new method of giving sentence in that, instead of definite time being fixed by the court, the sentence should be for not more than the maximum nor less than the minimum term then provided by law for such crime. It also provided that, where the maximum sentence to be given was left to the discretion of the court, as in the habitual criminal law of 1903, the court should, in imposing the sentence, fix such maximum. The appellant was sentenced to a term of not less than twenty nor more than forty years. The sentence upon the former conviction was ten years. "Not less than double" this time as provided for in the act of 1903 would be twenty years. No maximum sentence being provided for by law, the maximum must be pronounced in accordance with the act of 1907 vesting in the court imposing the sentence the power to fix such maximum. There being nothing in the indeterminate sentence act changing the punishment for any offense, we fail to see any reason for contending that it repeals the habitual criminal act by implication. One act fixes the punishment for the crime it names; the other provides the manner in which that punishment shall be pronounced by the court. The latter act in no sense changes the former act, nor is it

inconsistent therewith.   *Featherstone v. People,* 194 Ill. 325, 62 N. E. 684.

Finding no error, the judgment is sustained.

Crow, C. J., Parker, Fullerton, and Mount, JJ., concur.