IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| SNOHOMISH COUNTY SHERIFF TY TRENARY, | ) ) ) | No. 79426-4 |
| | ) | DIVISION ONE |
| Appellant, | ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| TIMOTHY GONSALVES and CHRISTOPHER MCMULLEN, | ) ) ) ) | |
| Respondents. | ) ) | FILED: March 23, 2020 |

ANDRUS, J. – Snohomish County Superior Court issued a writ of mandamus prohibiting the Snohomish County Sheriff's Office from using restraints on Timothy Gonsalves and Christopher McMullen at any non-jury criminal hearings. The Sheriff appeals, arguing that mandamus was inappropriate because corrections transport deputies do not have a mandatory legal duty to remove a defendant's restraints absent a court order and because Gonsalves and McMullen had adequate legal remedies outside of mandamus. We agree and reverse the trial court's writ of mandamus.

## FACTS

On December 12, 2018, Timothy Gonsalves, an in-custody defendant being held in the Snohomish County Jail pending two separate trials, filed a petition for a writ of mandamus against the Snohomish County Sheriff, Ty Trenary, and his

deputy officers (hereinafter "Sheriff") to "[c]ease placing physical restraints on this pretrial detainee or any similar[ly] situated citizen when present in the courthouse for judicial hearings, absent a hearing and judicial order that a particular individual presents specific security risks which requires the use of said physical restraints." That same month, Gonsalves amended the petition to add Christopher McMullen, another in-custody defendant, as an additional petitioner.

Gonsalves and McMullen alleged below that the Sheriff maintains a blanket policy of shackling all in-custody defendants during transport to court hearings, while awaiting court hearings, and during those proceedings without conducting individualized assessments of a particular defendant's dangerousness or flight risk. They alleged that Snohomish County Superior Court conducts omnibus and trial call hearings in Department 304, during which in-custody defendants in the courtroom must remain in restraints unless a court orders them to be removed. They further alleged that "it is the practice in Snohomish County Superior Court" to transport in-custody defendants to criminal motions hearings, plea hearings, trial call hearings, and sentencing hearings in restraints and to leave those restraints in place during these hearings.

Gonsalves and McMullen did not challenge any practice of the Snohomish County Superior Court. Instead, they sought a writ only against the Sheriff, claiming that the Sheriff and those under his command were violating their due process rights and those of all detainees by shackling them "absent a compelling showing following [a] hearing."

The Sheriff objected to the use of the mandamus procedure to address the issues raised by Gonsalves and McMullen. To support this objection, the Sheriff presented declarations from the elected Sheriff, Ty Trenary; Jamie Kane, the Major at the Snohomish County Sheriff's Office Corrections Bureau (Bureau), which operates the Snohomish County Jail; and Anthony Aston, the Chief of the Bureau. They described the following procedures and practices within the jail and the courthouse:

The Sheriff is responsible for a number of duties and functions in the county, including police patrol, criminal and traffic investigations, search and rescue operations, and management and operation of the county jail. The daily population of the jail averages approximately 900 individuals. The Bureau has developed and implemented written policies for the transport and restraint of in-custody defendants to and during court hearings. The policy considers the movement of any in-custody defendant to be a high risk activity. The custodial staff assigned to transport in-custody defendants follow routine practices and procedures for assembling and transporting these individuals to court.

First, in-custody defendants scheduled to appear for a court hearing are assembled in a "transport holding" area within the jail. The area, comprised of multiple occupant and single occupant cells, allows custodial staff to segregate people by gender and security level. If an in-custody defendant is housed in a maximum security area within the jail, they are placed in wrist and waist restraints prior to leaving their housing unit before they reach the transport holding area. All

other in-custody defendants are placed in waist and wrist restraints in the transport holding area before leaving the jail.

Corrections deputies then escort the in-custody defendants through a tunnel from the jail to the courthouse. They walk into the courthouse basement, at which time custody deputies place each in-custody defendant into leg restraints. The corrections deputies then escort the group of restrained defendants into public elevators to holding cells on the second or third floors of the courthouse, or into an unsecure area at the back of Department 304. A corrections deputy then conducts security sweeps of the courtrooms and verifies the location and time of each defendant's hearing. The current courthouse configuration does not provide for secure transport to each courtroom. The deputies navigate public areas and elevators to reach each courtroom.

In the past, deputies escorted defendants from the holding area in the courthouse to their respective courtrooms in full waist, wrist, and leg restraints. For jury trials, the defendants would be handcuffed behind their backs and escorted into the courtroom where the handcuffs were removed before the jury entered. Historically, the deputies escorted defendants to court in waist, wrist, and leg restraints for all non-jury trial court hearings and left the restraints in place during the hearings. If there were multiple defendants with hearings scheduled in the same courtroom, the deputies brought them all to that courtroom at the same time and staged them in the jury box until each one's hearing began.

Before Gonsalves and McMullen filed this lawsuit, the Snohomish County Prosecuting Attorney's Office arranged a meeting with the Snohomish County

Public Defenders Association, judges from superior and district court, and staff from the Bureau to discuss the use of restraints during transport of in-custody defendants from the county jail to courtrooms and during court proceedings. As a result of this meeting, the Sheriff temporarily agreed to change its policy:

> Corrections currently is prepared to present inmates for their court hearings out of restraints. This does not apply to transport of inmates from the Jail to the courthouse or maintaining inmates in the courthouse before and after hearings.

Under this agreement, for criminal hearings in courtrooms other than Department 304, deputies brought defendants into a courtroom one at a time. Unless a court ordered otherwise, the deputies removed the restraints before the judge took the bench. Once the hearing concluded, deputies placed restraints back on the defendant and escorted that defendant back to the holding area. This process repeated until all defendants scheduled to appear for a hearing had completed their court appearance.

For the criminal hearings in Department 304, deputies staged all defendants in the back of the courtroom in waist, wrist, and leg restraints. The deputies removed each defendant's restraints before their appearance and placed them back on after each defendant's hearing concluded.

Although the Sheriff and Bureau representatives agreed to this procedure, they nevertheless believed that it decreased courthouse safety and impacted the deputies' ability to maintain control of defendants. They also testified that it stressed the operational functions of the jail because additional deputies were necessary to monitor defendants during court proceedings. One concern expressed by the jail managers is the fact that the deputies transporting

defendants do not work in the housing units with the defendants and, as a result, do not know each individual's baseline behaviors and personalities. The transport deputies must be vigilant to a defendant who, under stress from the court proceedings, may act out unexpectedly. And the restraints are used as a way to keep the defendants safe from each other, as there may be co-defendants present in the courtroom at the same time. Finally, the Sheriff and Bureau management are concerned about the safety of the courtroom staff who may be unaware of risks presented by the presence of a defendant's friends, family, or enemies in the courtroom audience.

The trial court conducted a hearing on the petition on December 28, 2018. The record indicates that neither Gonsalves nor McMullen presented any evidence before or at the hearing. At the conclusion of this hearing, the court granted the writ of mandamus. The trial court reasoned that under Washington law, "a prisoner is entitled to be brought into the presence of the court free from restraints." It stated that the Sheriff had a legal duty not to violate this right and that it was a violation of this duty not to remove restraints when a defendant was in "the presence of the court." Gonsalves and McMullen were "in the presence of the court" when "court is in session," and "[c]ourt is in session when the judge is on the bench and the proceedings are on the record." The trial court also found that Gonsalves and McMullen lacked an adequate legal remedy, making mandamus appropriate.

The trial court, however, declined to prohibit the Sheriff from transporting all defendants from the jail to the courtroom in restraints, and it limited the writ to

Gonsalves and McMullen, rejecting their argument that it should apply to similarly situated individuals. The writ states:

> BY ORDER OF THE SNOHOMISH COUNTY SUPERIOR COURT, the Snohomish County Sheriff shall, acting through his agents and employees, bring Petitioner Gonsalves and Petitioner McMullen into the presence of the court free from restraints. This writ shall not supersede any future Order authorizing restraints that is entered by the Superior Court following an individualized determination that restraints are warranted.

The Sheriff appeals.

## ANALYSIS

The Sheriff advances two arguments on appeal. First, he argues that his transport deputies have no mandatory legal duty to remove a defendant's restraints absent a court order to do so. He contends that the deputies exercise discretion when determining to restrain a defendant until the trial court decides whether to order restraints removed. Second, he argues that Gonsalves and McMullen had adequate legal remedies other than the extraordinary writ of mandamus. We agree with both arguments.

A writ of mandamus "may be issued by any court . . . to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station." RCW 7.16.160. This writ is only appropriate where the official is under a "mandatory ministerial duty to perform an act required by law as part of that official's duties." Freeman v. Gregoire, 171 Wn.2d 316, 323, 256 P.3d 264 (2011). The mandate must define the duty with such particularity as to leave nothing to the exercise of discretion or judgment. Id. at 323. Whether there is a

clear duty to act is a question of law this court reviews de novo. Paxton v. City of Bellingham, 129 Wn. App. 439, 445, 119 P.3d 373 (2005).

Additionally, a writ of mandamus may only be issued in cases "where there is not a plain, speedy and adequate remedy in the ordinary course of law." RCW 7.16.170. The availability of such a remedy "is a question left to the discretion of the court in which the proceeding is instituted." River Park Square, LLC v. Miggins, 143 Wn.2d 68, 76, 17 P.3d 1178 (2001). An appellate court "will not disturb a decision regarding a plain, speedy, and adequate remedy on review unless the superior court's discretion was manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." Id.

The Sheriff first challenges the trial court's conclusion that transport deputies have a mandatory legal duty to remove a defendant's restraints for non-jury proceedings once a defendant's hearing commences, unless the trial court orders otherwise. He argues that the deputies have the discretion to leave the restraints in place and, under Washington case law, the duty of determining the appropriateness of restraints falls on the court. Gonsalves and McMullen argue just the opposite. They contend that the Sheriff has a mandatory duty to remove the restraints and that the trial court has the discretion to order that they be placed back on if the facts warrant. We conclude that the Sheriff has the better argument here.

First, a defendant has a clear constitutional right to appear in court without restraints in the presence of the jury. See State v. Williams, 18 Wash. 47, 48-49, 50 P. 580 (1897) (trial court's refusal to order removal of defendant's restraints and

restraints on defense witnesses during jury trial violated constitutional guaranty to fair trial); State v. Miller, 78 Wash. 268, 276, 138 P. 896 (1914) (defendant not prejudiced by being led from jail to courtroom in handcuffs because jury not aware of it and because defendant was flight risk); State v. Boggs, 57 Wn.2d 484, 488-89, 358 P.2d 124 (1961) (juror witnessed defendant in jail cell but any prejudice was cured with an instruction); State v. Sawyer, 60 Wn.2d 83, 85, 371 P.2d 932 (1962) (instruction cured any prejudice after jurors witnessed defendants being handcuffed after first day of trial). The Sheriff does not contend otherwise, and the Bureau had no practice of shackling any defendant in front of a jury.

Second, our case law has repeatedly indicated that it is the court's obligation—not that of the jail administration—to determine if restraints are warranted in any individual case. In State v. Hartzog, 96 Wn.2d 383, 635 P.2d 694 (1981), our Supreme Court invalidated a general security order issued by the Walla Walla Superior Court requiring all defendants to remain in restraints during trial. The court held that the trial court must evaluate the use of restraints on any defendant on a case-by-case basis and "must exercise discretion in determining the extent to which courtroom security measures are necessary to maintain order and prevent injury." Id. at 400.

Nearly a decade later in State v. Finch, 137 Wn.2d 792, 975 P.2d 967 (1999), our Supreme Court reiterated that it is an abuse of discretion for the court not to conduct an individualized assessment of the defendant's risk of escaping custody, injuring himself or others, or misbehaving in the courtroom. Id. at 850.

In granting the writ, the trial court relied on State v. Damon, 144 Wn.2d 686, 25 P.3d 418 (2001), in which our Supreme Court held that the trial court failed to exercise its discretion and in doing so, violated the defendant's right to a presumption of innocence when the court deferred to the corrections officer's recommendation to require the defendant to be held in a restraint chair during trial. Id. at 691-92. But the Damon court did not address the precise question presented here—namely, whether transporting deputies have a "mandatory duty" to remove a defendant's restraints during non-jury criminal hearings.

In fact, no Washington court has held that a law enforcement officer has a "mandatory ministerial" legal duty to remove a defendant's restraints before the trial court conducts an individualized assessment of that defendant's case. Each of the cases on which Gonsalves and McMullen rely addresses the trial court's duty, not the duty of the transporting deputies. And the record here amply supports why the decision to leave or remove restraints is a discretionary, not a mandatory, one. The Bureau has assessed the layout of the courthouse, the characteristics of each courtroom, the path they take to escort defendants from one area to another, the staff available on any given day for transporting defendants to courtrooms for non-jury proceedings and for jury trials, and unique security issues that may arise in any courtroom based on the number of other defendants in the same courtroom and the presence of court staff and members of the public.

In State v. Walker, 185 Wn. App. 790, 796, 344 P.3d 227 (2015), this court rejected the argument that jail or prison administrators have plenary authority to determine whether an inmate defendant must wear restraints in the courtroom:

> The interests of prison administrators in the security of their institutions and the resulting decision to use restraints are readily distinguishable from the interests of the court. To be sure, on matters of courtroom security, those interests may overlap because of common concerns about preventing injury to those in the courtroom, preventing disorderly conduct in the courtroom, and preventing escape . . . But, unlike in a penal setting, a court is also required to balance the need for a secure courtroom with the defendant's presumption of innocence, the defendant's ability to assist counsel, the right to testify on one's own behalf, and the dignity of the judicial process . . . While prison officials may be well positioned to assist the trial court in deciding matters of courtroom security, they are in no position to weigh and balance the many factors the court must consider when determining whether, and in what manner, a defendant should be restrained during a court proceeding.

Id. at 796-97. We placed the duty of making the individualized assessment—this balancing of an individual's constitutional rights against the need for security in a particular courtroom—on the shoulders of the trial courts. Id.

We thus conclude that the trial court erred in ruling that the Sheriff and his transporting deputies have a mandatory legal duty to remove restraints from an in-custody defendant during all criminal proceedings, even in the absence of a court order to do so.

Additionally, we disagree with the trial court that Gonsalves and McMullen lacked an adequate legal remedy. Mandamus is only proper "where there is not a plain, speedy and adequate remedy in the ordinary course of law." RCW 7.16.170. "A remedy is not inadequate merely because it is attended with delay, expense, annoyance, or even some hardship." City of Kirkland v. Ellis, 82 Wn. App. 819, 827, 920 P.2d 206 (1996). "There must be something in the nature of the action that makes it apparent that the rights of the litigants will not be protected or full redress afforded without issuance of the writ." City of Olympia v. Thurston County.

Bd. of Comm'rs, 131 Wn. App. 85, 96, 125 P.3d 997 (2005). Whether there is a plain, speedy, and adequate remedy in the ordinary course of the law is reviewed for abuse of discretion. River Park Square LLC, 143 Wn.2d at 76.

The trial court reasoned that the writ was appropriate here because "there is a continuing violation of a duty." It based this decision on Eugster v. City of Spokane, 118 Wn. App. 383, 76 P.3d 741 (2003). But Eugster is distinguishable. In that case, members of the Spokane City Council brought an action to invalidate an ordinance that required the city to loan parking meter revenue to a public development authority (PDA) to cover any shortfalls in the cost of erecting a parking garage. The garage developer, named as a defendant, filed a counterclaim seeking a writ of mandamus compelling the city council to comply with the ordinance. Id. at 397.

After concluding that the ordinance imposed a mandatory duty on the city to offer a loan to the PDA, the Eugster court analyzed whether the developer had any means, other than mandamus, to enforce the duty. 118 Wn. App. at 414. It concluded that the developer had no contractual basis for compelling the city to make the requested loan because no contract existed. Id. at 416. It affirmed the trial court's conclusion that the developer lacked a plain, speedy and adequate remedy in the ordinary course of law.

But the trial court here conducted no analysis of what options, other than mandamus, exist for Gonsalves and McMullen. First, the trial court has the ability and legal duty to protect Gonsalves's and McMullen's constitutional rights to be free of restraints. The record shows that the transport deputies escorted

Gonsalves and McMullen to the mandamus hearing in restraints. The court was able to quickly conduct an assessment of the need for the restraints by asking the deputies whether the Sheriff had any specific concerns and whether either defendant presented a flight risk, a risk of committing harm, or a risk of upsetting the decorum of the proceeding. After hearing from a transport deputy and reviewing the dockets for each of the defendant's criminal cases, the trial court determined that restraints were unnecessary. Gonsalves and McMullen, in essence, obtained an individualized assessment by the court on the spot without having to request it.

Second, Gonsalves and McMullen can simply ask to have their restraints removed in any criminal hearing. As Walker clearly indicates, had they made such a request, the court presiding over their hearing would have been obligated to conduct an assessment of the need for restraints. And Gonsalves and McMullen also could have sought a court order prohibiting the use of restraints at any future criminal hearings, thereby eliminating the need to raise the issue repeatedly. Had the Sheriff failed or refused to comply with such a lawful court order, Gonsalves or McMullen could have requested sanctions for contempt. See State v. Sims, 193 Wn.2d 86, 441 P.3d 262 (2019) (affirming court imposed remedial sanctions against DSHS for non-compliance with court ordered mental health evaluation). Moreover, as demonstrated by the mandamus hearing in this case, the trial court can raise the issue *sua sponte* even if a defendant or counsel does not.

Finally, if Gonsalves, McMullen, or any other defendant deems the Sheriff's "blanket" transport policy to be unconstitutional, they have a legal right to seek a

declaratory judgment and injunctive relief. See Johnson v. Moore, 80 Wn.2d 531, 496 P.2d 334 (1972) (individuals held in city jail without charge could bring suit for declaratory judgment and injunctive relief to challenge practice of holding individuals in city jail on suspicion of crime). There is a statutory mechanism for obtaining emergency temporary injunctive relief when a party can establish a violation of legal rights. See RCW 7.40.020 (grounds for issuance) and 7.40.050 (emergency restraining orders). Gonsalves and McMullen could have brought a declaratory judgment action to challenge the constitutionality of restraining defendants during non-jury criminal proceedings and could have sought an injunction to prevent the Sheriff from following any policy a court deems unconstitutional.

The trial court abused its discretion in concluding that Gonsalves and McMullen lacked an adequate remedy at law. A writ of mandamus was inappropriate under these circumstances.

Reversed.

WE CONCUR:

Andrus, J.

Dwyer, J.

Appelwick, C.J.