[No. 20632. Department One. September 6, 1927.]

THE STATE OF WASHINGTON, *Respondent,* v. FRED HARVEY *et al., Defendants,* ED. EKMON *et al., Appellants.*[1]

[1] CRIMINAL LAW (170)—EVIDENCE—CONFESSIONS UNDER DURESS—CORROBORATION. Confessions obtained by police officers by threatening that the accused would be locked up until they were willing to confess, and unless they confessed they would be prosecuted for a series of offenses, are obtained by duress, and are insufficient to warrant a conviction, unless corroborated by other evidence, as expressly provided by Rem. Comp. Stat., § 2151.

Appeal from a judgment of the superior court for Spokane county, Witt, J., entered January 8, 1927, upon a trial and conviction of taking a motor vehicle without permission. Reversed.

*Roy A. Redfield,* for appellants.

*Chas. W. Greenough* and *Louis F. Bunge,* for respondent.

FRENCH, J.—Four defendants, boys of high-school age, were jointly charged by an information filed in the superior court of Spokane county with the crime of joy-riding.

[1]Reported in 259 Pac. 21.

One of the defendants was transferred to the juvenile court; the three remaining were tried in the superior court.

[1] The evidence on the part of the state, in so far as it tended to connect these defendants with the crime, consisted entirely of purported confessions. No testimony of any kind was offered on behalf of the defendants; the only question in this case being whether or not these confessions were admissible in evidence, it being claimed by the defendants that they were obtained in violation of Rem. Comp. Stat., § 2151, [P. C. § 9217], which reads as follows:

"The confession of a defendant made under inducement, with all the circumstances, may be given as evidence against him, except when made under the influence of fear produced by threats; but a confession made under inducement is not sufficient to warrant a conviction without corroborating testimony."

The boys involved were, at different times and different places, questioned by two city detectives. The circumstances surrounding the purported confessions are detailed by one of the detectives to have been as follows:

"Q. Do you remember Mr. Aikman or yourself making a statement in which you held up your hand like this and said, 'These are the bars of the penitentiary,' or Monroe, I would not undertake to quote exactly, 'These are the bars. You are looking from behind them right now.' Do you remember that being said to him? A. I remember that being said. I would not say whether it was said to Ed Ekmon or whether it was said to Fred Harvey now. I am a little bit hazy as to who it was said to."

And further on in the testimony of the same witness, referring again to the examination—

"Q. Carman was quite reluctant to begin with? A. Yes, sir. Q. And denied any knowledge whatever, is that right? A. Yes, sir. Q. And you had to use

similar methods on him to get him to talk, is that right? A. I believe—I believe my partner said—well, I think I asked him a few questions and he did not want to answer them; and I think my partner said, 'Well, we will not fool with him, then. We will just take him down and lock him up,' 'That is the attitude he is going to have in the matter.' . . .

"Q. Does it refresh your mind if I suggest that you said you would lock him up until he would talk? A. That I said? Q. Well, either one of you, I do not know which. A. I believe my partner said something like that. . . . Q. Now, Mr. Alderson, do you not remember this: that, before the boy talked at all, this was said to him, that there was nothing for him to gain by denying, that, if he did not talk, you could stick him on three charges, and at another time it was said that you might be able to stick him on five different charges, if he did not talk. Don't you remember that being said to him by one or the other of you? A. I believe I said something like that to him."

The case of *State v. Miller,* 61 Wash. 125, 111 Pac. 1053, Ann. Cas. 1912B 1053, is the principal case in this state, and one of the leading cases in the United States, on the question of the use of confessions obtained in this manner. There, it was claimed that the prosecuting attorney had, in talking with the defendant, threatened him with certain prosecutions in case he did not talk, and, in answer to a question propounded by the defendant, the prosecuting attorney stated that he had had a talk with the defendant in which he said to him—

" 'Under the laws of this state, you could be charged with all these burglaries and your sentence would be tacked one on the other. I did tell him that. I suppose that was a sort of an implied threat. Otherwise I never said a word in any threatening manner.' "

In passing on the matter and reversing the case, Judge Dunbar, speaking for the court, said—

"The prosecuting attorney was there for a purpose. The evident purpose was to obtain a confession from

this appellant, and we think, under his own admission, that the threat which he made, or the implied threat as he terms it, was sufficient to render the confession made a confession obtained by duress. The appellant was confessedly a bright man and would understand, and it was no doubt intended that he should understand, that these cumulative sentences would follow if he did not confess."

In the instant case, the language used by the officers could have meant but one thing to these boys,— that they would be locked up until they were willing to talk, and that unless they confessed, they would be prosecuted on a series of charges.

Following the rule laid down in the case of *State v. Miller, supra,* the judgment is reversed.

MACKINTOSH, C. J., FULLERTON, MITCHELL, and MAIN, JJ., concur.