[No. 29357. Department Two. December 29, 1944.]

THE STATE OF WASHINGTON, *Respondent*, v. GERALD VAN BRUNT, *Appellant.*[1]

[1]Reported in 154 P. (2d) 606.

*Thomas A. E. Lally,* for appellant.

*John Hancock,* for respondent.

MALLERY, J.—The defendant was tried and convicted on an information charging him, jointly with several others, with larceny of a yearling bull calf, the true owner being unknown, on October 10, 1941. He appeals.

His confession introduced in evidence is as follows:

"I, Gerald Van Brunt, make the following statement and confession of my own free will and accord after being fully advised of all my legal rights and without promise of immunity or without threat being made to me. Sometime in the fall of 1941 Dick Peasley met me in Omak and wanted to know if I would like to take a ride to Nespelem. Dick had a couple of small calves which he wanted to trade off and he took these along in the pickup. We went to the Clarence Bell place north of Nespelem and talked with both Mr. and Mrs. Bell in regard to trading them the two calves, and Dick also wanted to get some short yearling calves from Bell. As I recall the conversation and statements made by the Bell's and Dick, Mrs. Bell had made arrangements to butcher one of their calves and sell it. Dick wanted to buy both of the short yearling calves which the Bell's had, but Mrs. Bell insisted that she had to butcher one of them. It was finally agreed upon that Dick would buy the two calves from Bell's and would trade or sell them the two small calves which he brought over and he would help them butcher a calf from off the range and they could sell it instead of butchering one of the two in pasture. Either Dick Peasley or Clarence Bell asked me to go with Mrs. Bell to find a calf that they could butcher. Mrs. Bell and I took a couple of saddle horses and started out on the hill above the Bell place to find a calf. Mrs. Bell, apparently, knew where we could find such a calf, and I went along with her. We found five or six head of cattle about a mile from Bell's and drove them down to Bell's corral. There was a red and white Hereford calf which Clarence and Dick and the rest of us thought would be the best one to butcher. We took all of the other cattle out of the corral except the red and white calf, and Mrs. Bell and

I drove the rest of the cattle nearly back to the place where we found them. Dick and Clarence butchered the calf and hung it up on the front end of the barn. When Mrs. Bell and I returned, Clarence and Dick had just finished taking the entrails out of the animal and had cut off the head and feet. I knew at the time that Mrs. Bell and I got out to the cattle that we were going to get a calf that did not belong to Bell's. When I got to the barn I understood then Clarence and Dick were going to butcher somebody's calf. I had never done this sort of thing before, and I did make some statement to Mrs. Bell that I did not like the idea of going out and getting someone else's calf to butcher. I also knew at the time we got back to the corral that it was the intention of Clarence and Dick to butcher a calf that did not belong to either of them. Dick and I came back to Omak after the calf was butchered and Dick hauled the two calves he had purchased from Bell's in his pick-up. It was the understanding at the time we left Bell's that Clarence would bring the butchered animal over to Omak the next day in his trailer. I saw Dick and Clarence together the following day in Omak. About two days later Dick met me in the poolhall at Omak and wanted to know if I would ride down to Okanogan and help him get the animal out of Fred Pien's cooler. Dick and Clarence, had understood, brought the butchered calf down to Pien's to have it skinned out. Dick and I hauled the meat back to Omak and took half of it to the Safeway Market. I left Dick there and did not go with him to deliver the rest of the meat. I did not get any part of the money which was received from the sale of the meat and had no other part in this deal than I have stated herein. I Gerald Van Brunt, have read the above and foregoing statement consisting of this page and one other, understand the contents thereof, and the statements made by me therein, and know that they are true.

"Dated this 19th day of August, 1943, at Okanogan, Washington.                                    GERALD VAN BRUNT"
"Witnesses:
"LESTER H. MOSS
"JOHN HANCOCK
"Time 3:45 P. M. August 19, 1943."

It was shown by disinterested witnesses that the head of the calf, after butchering, had been wrapped in burlap, tied with wire, and thrown over a cliff. The head was found and taken to a certain butcher shop and compared with

the hide of the calf which had been brought to the shop and there skinned and divided. The head and the hide belonged to the same, identical calf. The defendant and another person took the meat away from the shop and delivered one half of it to the Safeway market. It should be noted here that the defendant admitted the doing of all of the acts attributed to him and contends only that the calf was not a stolen one but that it belonged in fact to the Bells, who were codefendants. The state did not attempt to prove who the owner of the calf was. At the trial the Bells testified that the calf was theirs. This, however, was impeached by the state by their previous confessions.

The appellant assigns as error the court's refusal to give an instruction for a directed verdict; denial of appellant's motion for nonsuit; refusal to grant appellant's motion for a directed verdict; denial of appellant's motion for a new trial; the entering of the judgment on the verdict; the refusal of the court to grant the motion of Edith Bell for permission to change her plea from guilty to not guilty; and the exclusion from the evidence of Edith Bell's motion to change her plea.

In support of these assignments of error, the appellant contends that there was a failure of proof on the part of the state. He invokes Rem. Rev. Stat., § 2151 [P. C. § 9217], which reads:

"Confession as evidence. The confession of a defendant made under inducement, with all the circumstances, may be given as evidence against him, *except when made under the influence of fear produced by threats; but a confession made under inducement is not sufficient to warrant a conviction without corroborating testimony.*" (Italics ours.)

He contends that the defendant's confession was made under the influence of fear produced by threats and that the confession was made under inducement and that there was no corroborating testimony, as required by statute, which would sustain the conviction. The testimony upon which these contentions are made consisted of statements relating to the solitary confinement for three days and

nights of the defendant, with the electric lights burning so that he could not sleep; being called a liar; assurance of the sheriff's friendship and help if he would sign the confession; and, generally speaking, what might be termed an over-reaching of the defendant.

In support of his contention, appellant cites *State v. Miller,* 61 Wash. 125, 111 Pac. 1053; *State v. McCullum,* 18 Wash. 394, 51 Pac. 1044; *State v. Susan,* 152 Wash. 365, 278 Pac. 149; *State v. Bestolas,* 155 Wash. 212, 283 Pac. 687; *State v. Harvey,* 145 Wash. 161, 259 Pac. 21; *State v. Marcy,* 189 Wash. 620, 66 P. (2d) 846; *State v. Marselle,* 43 Wash. 273, 86 Pac. 586; *State v. Miller,* 68 Wash. 239, 122 Pac. 1066.

An analysis of these cases reveals that, where an issue of fact arises as to the question of the influence of fear produced by threats and confessions made under induce-ment, it is not a question of law for the court to decide but is a question of fact for the jury under proper instructions. Where threats or inducements are conceded by the state or where facts are admitted which as a matter of law con-stituted threats or inducements, it is a question of law for the court. See *State v. Seablom,* 103 Wash. 53, 173 Pac. 721, in which the court said:

"Before taking up other assignments of error, it will be proper to refer to the confession of appellant. It is con-tended that it was obtained under the coercion of 'num-bers, superior talent and ability, and legal knowledge.' Appellant, when arrested, was brought into the presence of the mayor of Granite Falls, who was, at the same time, a justice of the peace and an attorney at law, the chief dep-uty sheriff, also a lawyer, the prosecuting attorney and others, who took his confession and reduced it to writing. It was then signed by appellant. We find nothing in this circumstance to taint the transaction with duress or coer-cion. The confession, so far as the testimony of the state is concerned, was made voluntarily, and deliberately signed. While we hardly think the question is in issue, if it were, the court instructed the jury to reject the confession as evi-dence if it found that it 'was made under the influence of fear induced by threats.' *It being at best a disputed ques-tion of fact, the verdict of the jury concluded appellant to pursue the question further."* (Italics ours.)

■ In this case there was a controversy over the question of threats and inducements, and the court gave the following instruction:

"By the law of this State the confession of a defendant made under inducement, with all the circumstances, may be given in evidence against him except when made under the influence of fear produced by threats.

"You are instructed that confessions and admissions are to be received with great caution. You are instructed, however, that if, upon the whole testimony, you are satisfied that any confession or admissions were made by a defendant, and are also satisfied that the same were voluntary upon the part of such defendant, then the same shall be considered by you as evidence in this case. If otherwise, they shall not be considered as evidence.

"A confession or admission by a defendant is voluntary if at the time of making it he is not under the influence of fear produced by threats; that is, if he may or may not speak, as he choses.

"A confession made under inducement is not sufficient to warrant a conviction without corroborating testimony. You are instructed that corroboration may be either by direct testimony or by circumstantial evidence. : . ."

In the case at bar, the jury held against appellant's contentions as to threats and inducements, and it was within their province to do so.

■ Although appellant concedes that he did all of the acts attributed to him, he contends there was no corroboration on the question of the calf being a stolen one. It is true the state did not establish the true ownership of the calf. Indeed, it did not attempt to do so. It is too well settled in this state to require citation that the state is not required to prove the ownership of the thing stolen. It is sufficient if it is shown that the defendant stole it.

■ As to appellant's contentions that the confession was not admissible because the *corpus delicti* was not independently proven, we think *State v. Marcy*, 189 Wash. 620, 66 P. (2d) 846, is controlling. We quote:

"It is a rule that conviction cannot rest upon a confession made out of court unless there is independent evidence to establish that the crime has actually been committed by someone. However, the admission of the defendant, along

with other circumstances, can be shown to establish the *corpus delicti. State v. Scott,* 86 Wash. 296, 150 Pac. 423; L. R. A. 1916B, 844. . . .

"In a prosecution for larceny it is not essential that the *corpus delicti* should be established by evidence independent of that which tends to connect the defendant with its perpetration, but the same evidence may go to prove both the existence of a crime and the guilt of defendant, both standing together on a foundation of circumstantial evidence. *George v. United States,* 1 Okla. Crim. 307, 97 Pac. 1052.

"The evidence tended to show that the property, if stolen, was taken from the Bloedel Donovan Lumber Mills. But it was not necessary that the ownership be shown.

" 'Convictions of larceny have been affirmed on the proof that the property involved did not belong to the defendant, while its actual ownership could not be positively shown. *State v. Coss,* 12 Wash. 673, 42 Pac. 127; *State v. Smith,* 40 Wash. 615, 82 Pac. 918, 5 Ann. Cas. 686; *State v. Eddy,* 46 Wash. 494, 90 Pac. 641; *State v. McIntyre,* 53 Wash. 178, 101 Pac. 710; *State v. Ray,* 62 Wash. 582, 114 Pac. 439.' *State v. Kruger,* 145 Wash. 654, 261 Pac. 383."

We find no merit in appellant's assignment of error relating to Edith Bell's motion to be permitted to change her plea from guilty to not guilty. She was not on trial in this case. She appeared only as a witness. Her motion therefore did not lie. The court properly refused appellant's attempt to inject a foreign matter into the trial.

The judgment is affirmed.

Simpson, C. J., Beals, Blake, and Robinson, JJ., concur.