### GIRON et al. v. CRANOR.
### No. 739.

United States District Court
E. D. Washington, S. D.
Oct. 14, 1953.

R. Max Etter, Spokane, for petitioners.

Don Eastvold, Atty. Gen. of Washington, Cyrus A. Dimmick, Asst. Atty. Gen. of Washington, for respondent.

DRIVER, Chief Judge.

William Giron, Albert Gonzales, and Cecil Coluya, inmates of the Washington State Penitentiary, serving life sentences for murder, petitioned this Court for writ of habeas corpus. The petition was filed in forma pauperis; but, at the hearing on the order to show cause, an attorney of their own selection appeared for petitioners. He contends that a coerced confession of Gonzales was admitted in evidence and used to secure the conviction of petitioners in the State Court trial, in violation of the due process clause of the Fourteenth Amendment.

At the hearing and adjourned hearings on the order to show cause, Gonzales testified on behalf of the petitioners; and a number of police officers of the City of Seattle testified for the respondent, Superintendent of the State Pen-

itentiary. The Court took the case under advisement, and the respondent subsequently was granted permission to place in evidence transcribed excerpts of the State trial testimony of Gonzales and of several witnesses for the State. It appears from the evidence thus presented that, while Gonzales was in their custody, the Seattle police obtained from him a written confession, implicating Giron and Coluya, and that the confession was received in evidence at the trial over objection. In accordance with the prescribed State practice, the confession was submitted to the jury, together with the conflicting testimony as to the circumstances in which it was made; and the jury was called upon to determine whether it was obtained under the influence of fear, produced by threats.[1] Although only part of the trial testimony is in evidence here, it is sufficient to warrant the assumption that there was substantial evidence, other than Gonzales' confession, that the murder was committed as the result of a prearranged conspiracy, in the execution of which, each of the petitioners participated. The general verdict of guilty did not disclose whether the jury accepted the confession as voluntary, or rejected it as coerced and found the petitioners guilty on evidence other than the confession.

Petitioner Gonzales gave notice of appeal from the judgment of conviction; but nothing further was done to perfect the appeal, and it was dismissed by the Washington State Supreme Court, without consideration of the merits. Subsequently, petitioners applied to the same Court for writ of habeas corpus, and the application was denied without opinion. The United States Supreme Court denied certiorari, 344 U.S. 847, 73 S.Ct. 64.

The first question presented is whether this Court should make its own independent finding whether Gonzales' confession was coerced. The issue of coercion was presented to the jury, but, as stated above, how the jury decided it was not disclosed. Whatever consideration may have been given to the issue by the State Supreme Court in its denial of petitioners' habeas corpus application, that Court does not, under its well-settled practice, call witnesses to testify before it in person.

In Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 410, 437, decided February 9, 1953, the Supreme Court had occasion to consider what weight a Federal District Court should give to prior determination by the State Courts of the issues raised in a petition for habeas corpus. The majority opinion states that, although the Federal Court may, without a hearing, adopt the State Court's determination, if it appears "that the state process has given fair consideration to the issues and the offered evidence, and has resulted in a satisfactory conclusion", the Federal Court is not obliged or required to do so and "* * * a trial may be had in the discretion of the federal court or judge hearing the new application. A way is left open to redress violations of the Constitution." 344 U.S. pages 463, 464, 73 S.Ct. page 411. If "a trial may be had", it follows that the Federal Court Judge, as the trier of the facts, may pass upon the credibility of the witnesses, resolve conflicts in the testimony, and make his own findings, as, otherwise, the trial would be pointless.[2]

It is established by the evidence in the instant case, without substantial dispute, that, on January 7, 1950, at about 1:30 A.M., petitioner Gonzales, a forty-one

1. R.C.W. 10.58.030. Whether a confession should be rejected as induced by threats or fear of violence is a question of fact for the jury to decide, unless the State concedes that it was coerced, or the admitted facts are such as to establish coercion, in which case it is a question of law for the Court. State v. Seablom, 103 Wash. 53, 173 P. 721; State v. Van Brunt, 22 Wash.2d 103, 154 P.2d 606; State v. Meyer, 37 Wash.2d 759, 226 P.2d 204.

2. Lisenba v. People of State of California, 314 U.S. 219, 237, 238, 62 S.Ct. 280, 86 L.Ed. 166; Ashcraft v. State of Tennessee, 322 U.S. 143, 147, 64 S.Ct. 921, 88 L.Ed. 1192; see also Malinski v. People of State of New York, 324 U.S. 401, 404, 65 S.Ct. 781, 89 L.Ed. 1029.

year old Filipino, with an eighth grade education, a limited knowledge of the English language, and no prior acquaintance with American City Police methods, was arrested without a warrant and taken to the Seattle City Jail, where he was questioned regarding the shooting of one Fidel Molina, which had occurred about an hour before. The interrogation was continued off and on for a period of about twenty-four hours. Gonzales had no sleep, and he was not permitted to call a lawyer or communicate with his friends or with the Philippine Consul, although he requested permission to do so. No charge was filed against him, and he was not taken before a committing magistrate. At five o'clock, A. M., January 7, he signed a statement which did not amount to a confession. Early next morning, January 8, he was taken before two officers who had not previously questioned him and made the confession, which was reduced to writing and signed by him.

In the present proceeding, Gonzales testified as follows: Shortly after he was taken to the City Jail, he was questioned by two Seattle Detectives, whom he named and identified. They told him that he would have to make a statement and would do so, if he "knew what was good for him." When he demurred and asked to see his lawyer, they "got mad," and told him that he would not be permitted to "see anybody or call up anybody" until he made a statement. One of the detectives struck Gonzales in the lower abdomen four or five times with his fists. "It hurt awful." The same detective swore at him and threatened to kick his "god damn face!" He made both the first statement and the confession, because he was afraid that he would be beaten again if he did not make them. The two officers who took his confession did not abuse him in any way, but, on the contrary, were kind and sympathetic.

The detectives whom Gonzales accused of mistreating him both testified in person in the present case and denied that they ever struck or threatened him. They said that they saw him only on one occasion while he was in the City Jail. On the morning of his arrest, at the request of the Desk Sergeant, they had gone to an upper floor of the jail and brought him down for questioning.[3]

---

**3.** From the excerpts of the trial testimony in evidence here, it appears that the detective whom Gonzales accused of resorting to physical violence did not say, in either his direct or rebuttal testimony, whether he had seen Gonzales in the jail, but his testimony was such as to leave with the jury the impression that Gonzales had not seen him prior to the trial and was able to identify him because of a court room incident, related in the following quotation from the detective's rebuttal testimony:

"Q. Now, after you completed your testimony as a State's witness, did you have occasion to return here to the court room? A. I did.

"Q. And I will ask you whether in the absence of the jury you had any conversation with defense counsel here in the court room? A. I talked to Mr. Freeley.

"Q. Will you state whether or not the defendant Gonzales was present when you talked with Mr. Freeley? A. We were standing right behind Gonzales, the three, the three defendants were sitting where they are. And I came over to right about where Mr. Freeley is now.

"Q. And during the course of that conversation, will you state whether or not your name was mentioned? A. Mr. Freeley mentioned my name two or three times.

"Q. Was that—would that have been within the hearing of the defendant Gonzales? A. They all looked at me.

"Mr. Beardslee: That would call for a conclusion, your Honor, please.

"The Court: Overruled.

"Q. Now, directing your attention to the early morning of January 7, 1950, did you on the morning of January 7, 1950, or at any other time strike the defendant Albert Gonzales? A. No, sir, I did not.

"Q. Did you on the morning of January 7, 1950, or at any other time slap the defendant Albert Gonzales? A. I did not.

"Q. Did you on the morning of January 7, 1950, or at any other time in any manner threaten the defendant Albert Gonzales? A. I did not."

■ The Court has heard and observed the witnesses on the disputed issue of coercion and has endeavored to keep in mind the time-honored rules which jurors are instructed to apply in judging the credibility of witnesses. The Court thinks that, basically, Gonzales' story is a true story. Since the evaluation of conflicting testimony depends upon imponderable factors, which are difficult to analyze and to express,[4] it is deemed sufficient merely to say the Court is convinced that Gonzales was beaten by the Seattle Police; that he was threatened with further physical violence, if he did not do their bidding; and that the fear, produced by such mistreatment, caused him to make the confession which was used against him at the trial. The officers who took his confession did not mistreat him, it is true, but there was no need for them to do so. He had been effectively conditioned for confession by the softening-up process, administered by the two detectives. Gonzales' confession was not voluntary. It was the result of fear, induced by police brutality.

Respondent maintains that, even though the confession be regarded as coerced, its submission to the jury would not invalidate the conviction of Gonzales, since there was other evidence sufficient to support the verdict of guilty. Respondent relies upon the case of Stein v. People of State of New York, 346 U.S. 156, 73 S.Ct. 1077, decided June 15, 1953. The cited case is distinguishable from the case at bar. There, a New York State Court, in a jury trial, found three defendants guilty of murder. The written confessions of two of them, implicat-

ing the third one, were admitted in evidence over objection. Defendants claimed that the confessions were coerced. Following a procedure generally similar to the Washington State practice, the New York Court heard the evidence with reference to coercion in the presence of the jury and left to the jury the determination of that issue. The jury returned a general verdict of guilty. There was competent evidence, other than the confessions, to sustain the verdict. The case came up by certiorari for direct review of the affirmance by the New York Court of Appeals, 303 N.Y. 856, 104 N.E.2d 917, of the trial court's judgment of conviction. There was no attack on the conviction by habeas corpus in the State Courts or in Federal District Court. There was no finding by any court that the confession was coerced. In that posture of the case, the principal question, which the United States Supreme Court was called upon to decide, was the constitutionality of the New York State procedure.

The Court did not first consider whether there was evidence, other than the confessions, to support the jury's verdict. If respondent's contention here is sound, that should have been the initial inquiry, as it would have been the only one required to dispose of the case. Inquiry was first made into the circumstances under which the confessions were taken, in order to ascertain whether they would constitutionally support the convictions.[5] In doing so, the Court explained that the scope of its review of factual issues is very narrow and that, only in exceptional circumstances, to prevent grave miscarriages of justice will the weight

---

4. In the language of Mr. Justice Holmes, in Chicago, B. & Q. Ry. Co. v. Babcock, 204 U.S. 585, 598, 27 S.Ct. 326, 329, 51 L.Ed. 636, "many honest and sensible judgments * * * express an intuition of experience which outruns analysis and sums up many unnamed and tangled impressions,—impressions which may lie beneath consciousness without losing their worth."

5. In the case under discussion, Stein v. New York, supra, 346 U.S. at page 179,

73 S.Ct. at page 1090, the Court said: "Since these convictions may rest in whole or in part upon the confessions, we must consider whether they are ▮a constitutionally permissible foundation for a finding of guilt.

"Inquiries on which this Court must be satisfied are: (1) Under what circumstances were the confessions obtained? (2) Has the use of the confessions been repugnant to 'that fundamental fairness essential to the very concept of justice'?"

of conflicting evidence to support the judgment under examination be reviewed. "When the issue has been fairly tried and reviewed, and there is no indication that constitutional standards of judgment have been disregarded, we will accord to the state's own decision great and, in the absence of * * * conceded facts, decisive respect."[6] The Court considered the undisputed facts and found that they failed to show that the confessions were the result of physical or psychological coercion, or that they were rendered inadmissible because of illegal detention of the accused. It concluded that, if the jury accepted the confessions as voluntary, the verdict would not, on that account, be objectionable on constitutional grounds.[7]

There remained for consideration by the Court in the Stein case the alternative possibility that the jury may have rejected the confessions as coerced. If so, could the finding of guilt constitutionally rest upon other sufficient evidence? The issue had been raised at the trial by defendants' request for an instruction that, if the jury found the confessions were coerced, it must return a verdict of acquittal. The instruction was refused by the trial court.

The issue was a difficult one for the Supreme Court to decide. It had said, in effect, in a number of prior cases that, if a coerced confession is admitted in evidence, the judgment of conviction must be set aside, even though the evidence, apart from the confession, might have been sufficient to support a finding of guilt.[8] But to hold that rejection of the requested instruction constituted a violation of the Federal constitutional rights of the defendants would, in prac-

tical effect, condemn the long-standing practice of New York and many other states of submitting to the jury the question whether a confession is voluntary. Moreover, the Court had never gone so far as to hold that the admission in evidence of a coerced confession required acquittal or discharge of the accused, but had sent the cases back to State Courts for retrial. The Court concluded that rejection of the requested instruction was not error.

■ The foregoing review of its salient features indicates that Stein v. People of State of New York is not applicable to the present case. Here, this Court, which is authorized to pass upon the issue, has found, as a matter of fact, that a coerced confession was used in a State Court trial to secure a conviction. Stein did not expressly overrule any of the earlier cases in which the Supreme Court unequivocally condemned the practice of securing confessions by force and violence and said that such enforced self-incrimination violates the due process clause of the Fourteenth Amendment, because it is fundamentally unfair and outrages the innate, deep-seated sense of justice of the American people. "The rack and torture chamber may not be substituted for the witness stand."[9] Gonzales' conviction should be set aside. That does not mean, however, that he will be unconditionally released. The State may try him again, without the use of the confession, if it chooses to do so.[10]

■ Petitioners Giron and Coluya are in a different situation. As to them, no element of enforced self-incrimination is involved. They were named in Gonzales' confession, but the trial

6. Id., 346 U.S. page 182, 73 S.Ct. page 1091.

7. Id., 346 U.S. pages 182–188, 73 S.Ct. pages 1091–1094.

8. See Lyons v. State of Oklahoma, 322 U.S. 596, 597, 64 S.Ct. 1208 (footnote), 88 L.Ed. 1481; Malinski v. People of State of New York, 324 U.S. 401, 404, 65 S.Ct. 781, 89 L.Ed. 1029; Gallegos v. State of Nebraska, 342 U.S. 55, 63,

72 S.Ct. 141, 96 L.Ed. 86; Stroble v. State of California, 343 U.S. 181, 190, 72 S.Ct. 599, 96 L.Ed. 872.

9. Brown v. State of Mississippi, 297 U.S. 278, 285–286, 56 S.Ct. 461, 465, 80 L. Ed. 682; see also Chambers v. State of Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716.

10. Johnson v. Cranor, Wash., 260 P.2d 873.

court instructed the jury that the confession of one of the defendants was not to be used or considered as evidence against other defendants, who might be implicated by the confession. The Supreme Court definitely has taken the position that, in the present circumstances, admission in evidence of the coerced confession of a defendant does not violate the constitutional rights of a co-defendant.[11]

The petition for writ of habeas corpus is denied as to petitioners Giron and Coluya and is granted as to petitioner Gonzales. Findings of fact, conclusions of law, and order will be entered accordingly. The order will provide that Gonzales be released, unless the State grants him a new trial within sixty days after the date of the order, or, if appeal is taken, within sixty days after receipt by the Clerk of this Court of a mandate of the Court of Appeals affirming the order.

11. Malinski v. People of State of New York, 324 U.S. 401, 410–412, 65 S.Ct. 781, 89 L.Ed. 1029; see Stein v. People of State of New York, 346 U.S. 156, 194, 73 S.Ct. 1077.