[No. 34619.　Department Two.　February 26, 1959.]

THE STATE OF WASHINGTON, *Respondent*, v. DOUGLAS C. JOHNSON, *Appellant*.[1]

[1]Reported in 335 P. (2d) 809.

*John B. Troup* and *George W. Christnacht, Jr.,* for appellant.

*John G. McCutcheon* and *Charles R. Johnson,* for respondent.

HUNTER, J.—This is an appeal from a judgment of conviction for the crime of taking a motor vehicle without permission of the owner. RCW 9.54.020.

The vehicle in question was taken about noon on Tuesday, September 24, 1957. It was used by the defendant and others for a trip from Tacoma to Nisqually and back. The evidence showed that considerable drinking occurred during this trip. After the parties returned to Tacoma, the police found the vehicle and arrested one Arthur Bridges while he was attempting to enter it with another person. Bridges thereafter implicated the defendant who was arrested in his hotel room on September 26, 1957. The defendant was taken to the city jail and booked for being drunk and for investigation of auto theft. At the time of the trial, the other occupants in the automobile testified for the state to the effect that the defendant had informed them the vehicle was his. The defendant took the stand in his own behalf and testified that Arthur Bridges, one of the state's witnesses, said he had a friend's automobile and had been invited by Bridges to accompany him on the trip to Nisqually.

Prior to the trial, the Pierce county prosecuting attorney's office requested that a statement be obtained from the de-

fendant by the police on October 1, 1957. The defendant appeared in superior court on October 2, 1957, requested counsel, and the court appointed John B. Troup. On October 3, 1957, a voluntary statement was obtained from the defendant to the effect that he had stolen the vehicle. October 4, 1957, Mr. Troup was notified of his appointment as counsel. The prosecutor stated he thought the statement had been obtained prior to Mr. Troup's appointment, since his request for the statement had been made prior to that time. During the trial, the court refused to allow the statement to be admitted in evidence, but did allow it to be used for purposes of impeachment of the defendant's testimony. The jury returned a verdict of guilty and the defendant appeals.

Three issues are raised by appellant's assignments of error: (1) Whether the court properly instructed the jury; (2) whether intoxication is a defense; and (3) whether it was error to allow the statement to be used to impeach the testimony of the appellant.

The court gave instruction No. 24, as follows:

"It is the duty of each of the jurors while the jury is deliberating upon their verdict to give careful consideration to the view his fellow jurymen have to present upon the evidence in the case. He should not shut his ears and stubbornly stand upon the position he first takes, regardless of what may be said by the other jurymen. It should be the object of all of you to arrive at a common conclusion, and to that end you should deliberate together with calmness. It is your duty to agree upon a verdict if you can conscientiously do so."

Appellant argues that this instruction results in telling a layman on the jury "to compromise his own conviction and follow the rule of the majority, even though honestly convinced the defendant is innocent." He cites *State v. Ring*, 52 Wn. (2d) 423, 325 P. (2d) 730 (1958), wherein we said:

" . . . The law contemplates that jurors shall, by their discussion, harmonize their views, if possible, but not that they shall compromise with their consciences and yield to the majority for the mere purpose of agreement. . . ."

The instruction there, which we held to be erroneous, contained this language:

" '. . . *In other words he can properly doubt the correctness of his own opinion, when it is not concurred in by his fellow jurors, and may, without a violation of his oath, consent to a verdict which he would not alone render.' "

While instruction No. 24 could have been more aptly worded, it does not contain the objectionable implication of the instruction in the *Ring* case, *supra*, of a juror surrendering his verdict to the majority. We do not believe the jury could have been misled by this instruction.

▇▇▇▇ Appellant argues that the court erred in withdrawing the issue of voluntary intoxication from the jury as a defense to the crime of "joyriding." The court instructed that voluntary intoxication was not a defense to the crime charged.

The vehicle was taken between 12:00 and 12:15 p. m. on Tuesday, September 24th. The appellant's testimony revealed that he had been drinking the day before the car was taken and had planned to arise earlier, but slept in until 11:30 a. m. on the Tuesday that the vehicle was taken. There was some testimony as to his intoxication about 2:30 or 3:00 of that same afternoon, but no testimony, except the appellant's, regarding his condition of intoxication at the time the vehicle was taken. He testified:

" . . . Q. And what time did you get up? A. 11:30. Q. How intoxicated were you at 2:30? A. Well, I still remember what I was doing. I had quite a little wine under my belt by that time. Q. And at 12:15 or 12:30 of that same day, how intoxicated were you? A. Well, I wasn't too intoxicated then. That is when I was down in the Brittania, approximately that time. I came out of my room about 11:30. Q. Your testimony is that at 12:30 you were not intoxicated? A. No, I just got out of bed, you see. I couldn't be too bad. Q. 12:30 Tuesday, the 24th of September? A. Right. . . ."

From the foregoing admission of the appellant, there was no evidence upon which the requested instruction on intoxication could be predicated. The question of intoxication, being a defense to the commission of a crime charged under the "joyriding statute" (RCW 9.54.020), is not, therefore, before us for review.

■ Appellant also contends the court erred in allowing the state to use for impeachment purposes the heretofore mentioned statement obtained from the appellant, in the absence of his counsel, which the court had ruled inadmissible as substantive evidence. The court gave this instruction in regard to the use of the statement:

"You are instructed that the statement to Detective McCredie, used by the State in an attempt to show a prior inconsistent statement by the defendant, is not in any way to be considered by you as evidence of the crime charged in this case. Its only purpose was to test the credibility of the witness. You are permitted to consider such evidence for that purpose only. This statement has not been admitted into evidence as proof of the crime charged and you are not to consider it as such."

The trial court did not err in allowing the statement to be used for impeachment purposes, and the instruction given, permitting its use for that purpose, was a correct statement of the law. By our state constitution, the appellant was not required to take the stand but when he did he subjected himself to cross-examination and impeachment by whatever means available, as if he were an ordinary witness in the action. *State v. Crowder*, 119 Wash. 450, 205 Pac. 850 (1922). It should not be inferred from our approval of the foregoing instruction, however, that the statement could not be used as evidence of a confession of the appellant.

In *State v. Winters*, 39 Wn. (2d) 545, 236 P. (2d) 1038 (1951), we held that a confession is admissible as long as there is no showing that it was involuntary. We stated:

". . . There is no constitutional or statutory provision in the state of Washington having to do with the use of confessions as evidence against a defendant in a criminal trial, except Rem. Rev. Stat. § 2151 [*cf.* RCW 10.58.030]. Under the purview of the statute it was not error to admit the confession."

■ There is no showing the confession was involuntary here or that it was obtained under influence of fear produced by threats coming within the exclusion of the statute. RCW 10.58.030. It was, therefore, admissible as substantive evidence as well as for impeachment purposes.

Appellant also argues that he has been deprived of due process of law under the Federal constitution, citing *Cicenia v. LaGay*, 357 U. S. 504, 2 L. Ed. (2d) 1523, 78 S. Ct. 1297 (1958); and *Crooker v. California*, 357 U. S. 433, 2 L. Ed. (2d) 1448, 78 S. Ct. 1287 (1958).

The *Crooker* case held that California's failure to honor Crooker's request to consult with a lawyer, as yet unretained, during a period of police interrogation, did not violate the fourteenth amendment. In the *Cicenia* case, the court held that the rule in the *Crooker* case was applicable whether or not the lawyer had been retained previously. In both of the above cases, a confession was obtained from the defendant during the period of interrogation and its admission in evidence was affirmed.

In the *Crooker* case, *supra*, the court made this statement:

"Under these principles, state refusal of a request to engage counsel violates due process not only if the accused is deprived of counsel at trial on the merits [citation omitted], but also if he is deprived of counsel for any part of the pretrial proceedings, provided that he is so prejudiced thereby as to infect his subsequent trial with an absence of 'that fundamental fairness essential to the very concept of justice.' " (Citations omitted.)

There is no showing in the instant case that the appellant was so prejudiced in any respect as to result in a denial of due process, either under the state or Federal constitutions. We are satisfied he was afforded a fair trial. We find no error in the proceedings of the trial court and the judgment should be affirmed.

It is so ordered.

WEAVER, C. J., HILL, DONWORTH, and FOSTER, JJ., concur.