[No. 34735. *En Banc.* September 14, 1961.]

THE STATE OF WASHINGTON, *Respondent,* v. RAYMOND L. HAYNES, *Appellant.**

*Reported in 364 P. (2d) 935.

*Keogan & Kinnie,* for appellant.

*John J. Lally, John P. Tracy, Jr.,* and *Carroll D. Gray,* for respondent.

FINLEY, C. J.—In the trial court Raymond L. Haynes, the appellant herein, and his brother, Keith E. Haynes, were found guilty by a jury on a charge of robbery of a filling station in Spokane, Washington, at approximately 9:00 p. m., on the evening of December 19, 1957.

Shortly after the occurrence of the robbery, the two brothers were apprehended, arrested, and taken to the police station in Spokane. There, they were positively identified by the owner of the filling station and his wife as the men who had committed the robbery. Both men were booked for investigation on an open charge on the so-called "small book" of the Spokane police department. *Around noon on the following day,* both appellant and his brother, in the presence of a deputy prosecuting attorney, signed statements in which they admitted having committed the robbery. They were then formally charged with the crime, and after an appearance before a police judge they were taken to the county jail.

At the trial the state offered in evidence the signed statements of appellant and his brother. Appellant objected on two grounds: (a) That the statements offered were not confessions in that they did not contain a clear and unequivocal expression of guilt; and (b) that admission of the statements would violate the constitutional rights of the appellant with respect to self incrimination by forcing him, against his will, to offer evidence against himself. The trial court overruled the objections and admitted the statements. Appellant's principal assignment of error concerns this ruling of the trial court.

Appellant does not now contend that the statements were not confessions. He urges that, as confessions, the statements were erroneously admitted, because the circum-

stances surrounding their making rendered them involuntary and thus inadmissible under the due-process provisions of the fourteenth admendment to the United States Constitution and Art. I, § 3, of the Washington state constitution. The record discloses that the trial court instructed the jury not to consider any out-of-court admissions or statements of one defendant as evidence against the other defendant, and appellant has made no assertion that this instruction was violated. Consequently, we shall confine our attention to the contention of appellant with respect to his own confession.

▮ Before discussing this contention, we must dispose of the state's argument that the objections (made to prevent the confession from being considered by the jury) did not *specifically* raise the question of whether the confession was made voluntarily. It seems to us that appellant's objection—that admission of the confession would force him to offer evidence against himself and *against his will*—was sufficient to place the question before the trial court as to whether the confession was voluntary. The record discloses that, after admitting the confession, the trial judge submitted it to the jury under instructions to disregard it if they found it had been made involuntarily. We think this in itself indicates that the trial court had been properly informed by the objection and was well aware of the fact that voluntariness of the confession was in issue.

We now turn to appellant's argument that admission of the confession into evidence violated his rights to due process under the Federal and state constitutions.

▮ It is clear that decisions of the Supreme Court construing the fourteenth admendment to the United States Constitution prohibit the use of an involuntary confession against a defendant in a criminal action. See, for example, *Ashcraft v. Tennessee* (1944), 322 U. S. 143, 88 L. Ed. 1192, 64 S. Ct. 921, and cases cited therein. However, the above-noted instruction given by the trial judge not only indicates he was aware that voluntariness of appellant's confession was in issue, but it also indicates that the confession was *only conditionally admitted* as evidence against the appel-

lant. The *final determination* as to whether it was a voluntary confession, which might be considered as evidence against the appellant, *was made by the jury* and not by the trial judge. The fourteenth amendment to the United States Constitution *does not forbid jury determination* of the issue of voluntariness of a confession. *Stein v. New York* (1953), 346 U. S. 156, 97 L. Ed. 1522, 73 S. Ct. 1077. This, plus the fact that appropriate instructions were given to the jury on the question of voluntariness of the confession, should, we think, end this matter.

We say this despite the fact that recently the procedure in our state for determining the voluntariness of a confession has been altered and, we think, improved in terms of fairness and protection to the criminally accused by the adoption of Rule of Pleading, Practice and Procedure 101.-20W, RCW Vol. 0, as amended, effective January 2, 1961. Thereunder, provision is made for a special hearing *before the trial court* out of the presence of the jury on the question of voluntariness of a confession. However, the procedure which was in effect and actually followed at the time the instant case was tried was not necessarily an unfair one. Essentially, it delegated to the jury rather than to the trial judge the responsibility for determining the credibility and evidentiary significance to be attributed to a confession. In this connection perhaps the parallel should be noted that in our system of law we still entrust to the jury rather than the judge the responsibility for determining the perhaps even more crucial ultimate question of guilt or innocence. Furthermore, it may be noteworthy that there seems to be no serious movement afoot in the Federal or other appellate courts, among the law reviews or text writers to reverse this latter facet of our criminal procedure. As described in *State v. Van Brunt* (1944), 22 Wn. (2d) 103, 154 P. (2d) 606, the procedure extant re confessions and applied in the instant case was as follows:

" . . . where an issue of fact arises as to the question of the influence of fear produced by threats and confessions made under inducement, it is not a question of law for the court to decide but is a question of fact for the jury under

proper instructions. Where threats or inducements are conceded by the state or where facts are admitted which as a matter of law constituted threats or inducements, it is a question of law for the court."

The confession in the instant case was admitted into evidence by the trial judge. It was submitted to the jury under instructions, which were appropriate to the factual issue of voluntariness. The question before us on this appeal under the *Van Brunt* decision, as excerpted above, is whether the state had conceded or admitted that the confession was made under the influence of threats or inducements. If the answer is in the affirmative, then the trial judge erred as a matter of law in admitting the confession into evidence and allowing the jury to consider it in determining the question of guilt.

We have noted that the confession in issue was made at the close of an approximately fourteen-hour period, during which the appellant was in the Spokane police station on the so-called "small book," and that he was not formally charged with the robbery until after the confession was made. Appellant makes no charge that he was physically mistreated during this period, or that he was deprived of sleep or food. Specifically, he claims (a) that he was not allowed to telephone his wife during this period, and (b) that he was told he could call her only after he had made a statement and was formally charged. This, as a condition relative to the making of a statement, *is not conceded by the state.*

Appellant's theory emphasizes that the confession was involuntary because it was procured in violation of RCW 9.33.020(5), which provides:

" . . .

"(5) No officer or person having the custody and control of the body or liberty of any person under arrest, shall refuse permission to such arrested person to communicate with his friends or with an attorney, nor subject any person under arrest to any form of personal violence, intimidation, indignity or threats *for the purpose of extorting from such person incriminating statements or a confession.* Any per-

son violating the provisions of this section shall be guilty of a misdemeanor." (Italics ours.)

■ In *State v. Miller* (1912), 68 Wash. 239, 122 Pac. 1066, in which the prosecution admitted that the defendant had been kept in a dark cell for eight days and was threatened with additional prosecutions if he did not confess, this court held that a confession induced by a violation of RCW 9.33.020(5) was inadmissible under RCW 10.58.030. As we view it, the standard or rule established by the statute breaks down into three facets: (1) a refusal by the police to allow the arrested person to communicate with his friends (obviously including family) or an attorney, or subjection of the suspect to personal violence or threats, etc.; (2) done for the purpose of inducing the arrested person to make incriminating statements; and (3) actually inducing the particular confession under attack. The record in the instant case discloses that the trial judge was aware of this statutory rule for, in addition to giving the jury a general instruction to disregard any confessions they found to be involuntary, he instructed them that if they found that any officer having custody of the appellant denied him communication with his friends or an attorney they could consider such denial in relation to the question of the voluntariness of any statement made. Therefore, we may assume that, in admitting the confession into evidence, the trial judge decided, under the test set out in *State v. Van Brunt, supra,* that the state had neither *conceded nor admitted, as a matter of law,* that the confession was induced by a denial of communication contrary to RCW 9.33.020(5). The appellant's contention that the trial court erred in admitting the confession has merit only if the decision in *Van Brunt* was erroneous.

■■ Reviewing the record, it appears that at the time the confession was offered in evidence by the state the following testimony was before the court:

(1) An admission on cross-examination by one of the police officers who had been called by the state that the confession had been made while the appellant was on the "small book";

(2) A further admission that persons on the "small book" were generally allowed no phone calls, and that the appellant may have been refused permission to call his wife during the period prior to his making the confession;

(3) The following question on cross-examination by the appellant's counsel, and answer by one of the police officers:

"Q. At the time you were interrogating the defendant, Raymond Haynes, did you make a statement to him; in effect, that you can't make a phone call until we get a statement? A. I don't remember making any such statement."

Finally, the confession itself concluded with the following:

"Q. Have we made you any threats or promises? A. No. Q. Has [sic] any police officers made you any promises or threats? A. No—except that the Lieutenant promised me that as soon as I was booked that I could call my wife. Q. You are being held for investigation—you haven't been booked yet. When you are, you will be able to phone your wife."

Although it appears from the foregoing that the state's witnesses may be said to have admitted that appellant was refused permission to call his wife until he was formally booked, and that, as things worked out, he was not booked until after he signed the written confession, the key assertion of appellant—that he was told that he could not call his wife until he signed the written confession—was not admitted. It is our conclusion that, under the procedure in effect in this state at the time of the trial, the trial judge properly admitted the confession *and left to the jury the question of whether it had been made voluntarily.*

 In appellant's testimony at the trial there is some indication that during the period he was on the so-called "small book" he was denied permission not only to call his wife but, also, to call an attorney. Appellant makes no contention that the denial of counsel was significant, except as related to the question of the voluntariness of the confession. The question of voluntariness of the confession was properly submitted and passed upon by the jury under the procedure existing at the time. We, therefore, find it

unnecessary to consider the significance of absence of counsel during this period in any other context. In any event, absent a showing that, because of the absence of counsel during this period, appellant was "so prejudiced thereby as to infect his subsequent trial with an absence of 'that fundamental fairness essential to the very concept of justice' " (*Crooker v. California* (1958), 357 U. S. 433, 2 L. Ed. (2d) 1448, 78 S. Ct. 1287), it should be clear that the absence of counsel, by itself, does not constitute reversible error. *State v. Johnson* (1959), 53 Wn. (2d) 666, 335 P. (2d) 809.

■ Appellant is about twenty-five to thirty years of age. Although there is no statement in the record of his educational background, it is abundantly clear from his testimony at the trial that he is an articulate person and certainly one of average intelligence, to say the least. Except to those perhaps inclined to be apprehensive or unduly allergic to law enforcement officers and their use of effective law enforcement techniques, his three prior felony convictions should be indicative of one of the hard practical facts of life: namely, that the processes of the law were not new and strange to appellant Haynes. To put it bluntly, and with no intention of humor or whimsy, this is not the case of an innocent or bewildered lamb, unfairly disadvantaged by police state officials. Evaluating realistically the circumstances which we think are reasonably pertinent, we are convinced that (a) submission of the confession for the jury to determine its voluntariness and evidentiary weight, and (b) the absence or lack of legal counsel when the confession was made did not deprive this particular appellant of his liberty without due process of law.

Unquestionably, the judicial branch of government has an obligation to protect suspected or alleged criminal offenders against unreasonable denial by law enforcement officials of due process—fundamental principles of fair play. This, of course, is true whether untoward official action is merely over-zealous and perhaps due to inexperience, or is attributable, in common parlance, to "harness bull fever"; *i.e.,* over exposure to occupational hazards and authoritarian human tendencies. On the other hand, the courts have a

responsibility to protect and secure the public against the vandalism and violence of the apparently ever present and perhaps increasingly threatening criminally inclined segment of our population.

Without citing cases, it may be noted that in fairly recent years significant due process criminal protection concepts have blossomed and developed in American jurisprudence. The concomitant is a loss of some authority, and perhaps effectiveness, on the part of law enforcement officials. From this, realistically, it follows that, in recognizing and applying criminal due process concepts, the problem as well as a function of the judiciary is to chart a reasonable course for the law between two social objectives. (These in some respects, which we will not attempt to delineate, are somewhat paradoxical.) They are (a) protection of the public against criminal acts and conduct of its members, and (b) protection of the criminally accused against over-zealous and unfair law enforcement activities. Either objective considered and emphasized without relation to the other can easily lead to one or the other of two undesirable extremes. The problem, at times, is quite perplexing, but not to the degree that reasonable, intelligent and workable judicial resolution is impossible.

With the foregoing considerations in mind, it is our best judgment that drawing the line as above indicated (supporting the validity of the trial court's handling of the confession) affords reasonable protection not only to the criminal defendant herein but also to the members of the public of our state.

It has been urged that the recent case of *Griffith v. Rhay* (Sept. 12, 1960, 9th Circuit), 282 F. (2d) 711, militates against our disposition of the confession issue in the instant case. In *Griffith* the police interrogated the defendant shortly after he was given a narcotic drug to relieve him of pain. He had not been told of his right to counsel or of his right to remain silent. The Court of Appeals, considering the defendant's youth (nineteen years), his limited formal education, and a history of emotional instability, along with the other circumstances, held that the confession obtained

at the interrogation was invalid. The circumstances of the instant case are manifestly different from those in *Griffith v. Rhay, supra*. See, in addition to *Crooker v. California, supra*, *Cicenia v. LaGay* (1958), 357 U. S. 504, 2 L. Ed. (2d) 1523, 78 S. Ct. 1297, in which the United States Supreme Court upheld the procurement of a confession obtained from a defendant who turned himself over to the police upon the advice of counsel, and whose repeated demands during interrogation to confer with counsel and the contemporaneous demands of the attorney to see his client were denied until after the confession was obtained.

Appellant has also assigned error to the trial court's instructions Nos. 5 and 10. Instruction No. 5 informed the jury that the crime of robbery consists of a taking of personal property from the person of, or in the presence of, the owner against the owner's will and by means of force or violence, or fear of immediate injury to his person. Appellant contends that the instruction should have included an additional element; *i.e.*, a specific intent to deprive and defraud the owner of his property. The record discloses that the trial court declined to include this element in the instructions because it is an element of the crime of larceny, and where the charge is robbery an instruction on larceny is not required unless requested as an instruction on a lesser included offense. *State v. Parsons* (1906), 44 Wash. 299, 87 Pac. 349. As no request was made for such instruction on larceny—the appellant in fact insisting that he did not want such an instruction—we conclude that instruction No. 5, as given, was sufficient. *State v. Druxman* (1915), 88 Wash. 424, 153 Pac. 381.

Instruction No. 10 informed the jury that, where the actual existence of a particular intent is a necessary element to constitute a particular crime, the fact of the appellant's intoxication may be considered in determining his capability to form the intent to commit the crime. Appellant objected to the following language contained in the instruction:

"If you find either accused was so drunk at the time he is alleged to have committed the crime charged as to render

him unconscious of his act, incapable of controlling his will, and forming and entertaining a *felonious* intent, his intoxication is a defense." (Italics ours.)

Specifically, appellant urges that the instruction is inadequate for failing to define the "felonious intent" required in robbery as an intent to steal. This question was raised in *State v. Byers* (1925), 136 Wash. 620, 241 Pac. 9, and was disposed of adversely to appellant's contention. We adhere to that decision.

For the reasons indicated hereinbefore, the judgment of the trial court should be affirmed. It is so ordered.

MALLERY, HILL, OTT, and HUNTER, JJ., concur.

FOSTER, J. (dissenting)—I dissent.

The facts surrounding appellant's arrest and detention, and concerning which there is no material dispute,[1] are as follows:

Appellant was arrested at approximately nine p. m., Thursday, December 19, 1957. The police officers testified that there was little doubt appellant had committed the crime in question. He was taken to the police station, questioned by two police officers, and pressed for a statement of guilt. He then asked permission to call an attorney, but he was told that he could do so only if he "co-operated" and made the statement. The complaining witnesses positively identified him as one of the two men who had robbed them. Nevertheless, when he was taken to the city jail, he was booked on an "open charge," or, in plain language, held for investigation without charge, characterized by police officials as the "small book" which prohibited telephone calls or visitors.

Appellant was interrogated from about 10:30 p. m. to midnight by a police lieutenant who, observing the rules

---

[1] The testimony of one member of the police department that he did not remember telling the appellant that he could not telephone until he made the requested statement does not amount to a denial of appellant's positive testimony that the police did so, especially when appellant testified that other members of the police department made similar statements.

of the small book, denied appellant's request to call his wife. The next morning, appellant was again interrogated for approximately one and one-half hours. His request to call his wife was reiterated and again refused. The police said that when appellant made a statement he would be booked on a specific charge, and only then would he be allowed to call his wife. The police answer was repeated over and over again.

Subsequently that morning, appellant dictated, but refused to sign, a statement. It was offered in evidence by the state and admitted. The quoted portion reveals the unfairness which attended the entire police proceedings:

"Q. Have we made you any threats or promises? A. No. Q. Has any police officers [sic] made you any promises or threats? A. No—*except that the Lieutenant promised me that as soon as I was booked that I could call my wife.* Q. You are being held for investigation—you haven't been booked yet. When you are, you will be able to phone your wife." (Italics mine.)

When asked to sign the statement, appellant refused to do so and again requested permission to call his wife, which was again refused. Instead, he was conducted to a deputy prosecutor's office where he was asked to make another statement. He did so, but again he refused to sign because he had not been allowed to call his wife. He was again promised that he would subsequently be allowed to call. He finally did sign a stenographic transcription of the statement previously made at the city jail, but refused to sign the new one. It was only then that he was charged with robbery, and was taken for a preliminary hearing before a magistrate about four p. m. the day after arrest.

At the preliminary hearing, appellant signed another copy of the statement he had made at the city jail. He was then bound over and transferred to the county jail where he was confined until the following Tuesday or Thursday, December 24th or 26th, when he was returned to the deputy prosecutor's office and again asked to sign the statement previously made there. He again refused. It was in that office, on December 24th or 26th, either five or seven days

after his arrest, that appellant was allowed to make his first contact with the outside world, a telephone call to his wife.

At no time from his arrest on December 19th to the time of the telephone call on December 24th or 26th, was appellant allowed to communicate with anyone outside despite his repeated requests to do so. Appellant's wife had telephoned the city jail where he was incarcerated on Friday, December 20th. She was refused any information at that time except the fact that he was being held. The following day, Saturday, December 21st, she called at the jail in a futile attempt to see him but was not successful until Thursday, December 26th, one full week after the arrest.

It cannot be overemphasized that the police themselves admitted that appellant was confined under the small book, which prohibited all visitors and utterly precluded any communication with the outside world.

At no time during the first twenty-four hours, at the end of which appellant signed a confession, or during the ensuing proceedings covering a full week, was he represented by counsel despite repeated requests. Such, then, are the facts revealed by the record brought here.

In criminal prosecutions, both in England and in the United States, the accusatorial system prevails in contrast with the inquisitorial method of continental Europe. Of this, Mr. Justice Frankfurter for the court in *Watts v. Indiana,* 338 U. S. 49, 93 L. Ed. 1801, 69 S. Ct. 1347, said:

" . . . Ours is the accusatorial as opposed to the inquisitorial system. Such has been the characteristic of Anglo-American criminal justice since it freed itself from practices borrowed by the Star Chamber from the Continent whereby an accused was interrogated in secret for hours on end. See Ploscowe, *The Development of Present-Day Criminal Procedures in Europe and America,* 48 Harv. L. Rev. 433, 457-58, 467-473 (1935). Under our system society carries the burden of proving its charge against the accused not out of his own mouth. It must establish its case, not by interrogation of the accused even under judicial safeguards, but by evidence independently secured through skillful investigation. 'The law will not suffer a prisoner

to be made the deluded instrument of his own conviction.' 2 Hawkins, Pleas of the Crown, c. 46, § 34 (8th ed., 1824). The requirement of specific charges, their proof beyond a reasonable doubt, the protection of the accused from confessions extorted through whatever form of police pressures, the right to a prompt hearing before a magistrate, the right to assistance of counsel, to be supplied by government when circumstances make it necessary, the duty to advise an accused of his constitutional rights—these are all characteristics of the accusatorial system and manifestations of its demands. . . ."

Even in *Haley v. Ohio,* 332 U. S. 596, 92 L. Ed. 224, 68 S. Ct. 302, the confession typed by the police contains a prologue that the accused was advised of his constitutional right not to speak and that anything he said might be used against him. Modern English law requires the identical safeguards. Mr. Justice Devlin of the High Court of Justice, in his recent work respecting police interrogation, entitled "The Criminal Prosecution in England" (Yale U. Press, 1958), said:

"The form of caution expresses two things. First, there is the reminder that the accused is not obliged to talk; secondly, there is the warning that, if he does talk, what he says will be taken down in writing and may be given in evidence. . . ." Devlin, The Criminal Prosecution in England, chapter 2, p. 31, 36.

During the police examination of the accused, the signed question and answer confession discloses that appellant begged to talk even to the prosecutor. This, too, was denied him. The overpowering circumstance of this record is that the accused was never advised of his constitutional right to refuse to speak or that, if he did so, his statement might be used against him; nor was he accorded his constitutional right to counsel.

In light of the long struggle for human rights culminating in our constitutional prohibition against self incrimination and the constitutional guaranty of the right to counsel, I am not persuaded that the admission in evidence of a confession under the circumstances disclosed by this record

comports with the due process requirement of the fourteenth amendment to the Federal constitution.

The state contends, and the court holds, that the sole issue to be determined in deciding whether appellant was accorded due process of law as required by the fourteenth amendment to the United States constitution and Art. I, § 3, of the Washington state constitution, is whether the confession was voluntary or not. It is held that the jury properly made such determination. However, voluntariness is not to be considered in isolation, but the question on the due process issue is whether the totality of the circumstances show that the appellant's "will was overborne at the time he confessed."

The methods employed in criminal prosecutions are limited by the fundamental rights guaranteed by the constitution, and evidence thus produced may not be used if such use results in a violation of those rights. *Lisenba v. California,* 314 U. S. 219, 86 L. Ed. 166, 62 S. Ct. 280; *Chambers v. Florida,* 309 U. S. 227, 84 L. Ed. 716, 60 S. Ct. 472.

Here we are confronted with a violation of the right to counsel prior to trial. Such constitutional right is explicitly guaranteed by the state and Federal constitutions. Without the effective assistance of counsel, the fairness required by due process is impossible.

From the undeniable facts with which this record fairly bristles, it is certain that for a whole week following his arrest, in spite of repeated requests, appellant was denied the right to see or communicate with anyone not positively identified with his prosecution.

The New York court of appeals decided in *People v. Di Biasi,* 7 N. Y. (2d) 544, 166 N. E. (2d) 825, that constitutional rights were violated when police continued to interrogate one charged with murder in the absence of his attorney. The appellate division of the supreme court of New York in *People v. Stevenson,* 213 N. Y. S. (2d) 930, subsequently reversed the dismissal of a petition for a writ of error *coram nobis* because the accused should have been permitted to prove that he was interrogated by the police in the absence of counsel, which violated his constitutional rights.

The court's decision affirming Haynes' conviction cannot stand in the face of *Reck v. Pate,* 367 U. S. 433, 6 L. Ed. (2d) 948, 81 S. Ct. 1541 (June 12, 1961). The circumstances of that case are strikingly similar to those presented here and are briefly summarized by Mr. Justice Douglas in his concurring opinion:

"He was arrested Wednesday morning, March 25, 1936. The next day, March 26, his father went to the police asking where his son was and asking to see him. The police would give him no information. On March 27 his father came to the police station again but was not allowed to see his son. Later the father tried to see his son at the hospital but was denied admission.

"The father was denied the right to see his son over and again. The son was held for at least eight full days *incommunicado*. He was arraigned before a magistrate on April 2, 1956 [*sic*, 1936] only after he had confessed."

The court's opinion stated the test was:

". . . The question in each case is whether a defendant's will was overborne at the time he confessed. . . ."

Mr. Justice Douglas, in his concurrence, made a statement that precisely fits the circumstance which the court here sanctions:

"We do know that long detention, while the prisoner is shut off from the outside world, is a recurring practice in this country—for those of lowly birth, for those without friends or status. . . ."

I cannot agree that the defendant's right to a fair trial was not denied by the admission in evidence of this confession.

In *Crooker v. California,* 357 U. S. 433, 2 L. Ed. (2d) 1448, 78 S. Ct. 1287, quoted and approved in *State v. Johnson,* 53 Wn. (2d) 666, 335 P. (2d) 809, the supreme court of the United States said:

". . . state refusal of a request to engage counsel violates due process not only if the accused is deprived of counsel at trial on the merits, *Chandler v. Fretag, supra* [348 U. S. 3, 99 L. Ed. 4, 75 S. Ct. 1], but also if he is deprived of counsel for any part of the pretrial proceedings, provided that he is so prejudiced thereby as to infect his subsequent

trial with an absence of 'that fundamental fairness essential to the very concept of justice.' . . ."[2]

The first issue for determination is whether the denial of appellant's constitutional right to counsel resulted in an absence of fairness in his prosecution.

The right to have counsel at the pretrial stage is almost invariably necessary to give meaning and protection to the right to be heard at trial itself. See *Chandler v. Fretag,* 348 U. S. 3, 99 L. Ed. 4, 75 S. Ct. 1; *House v. Mayo,* 324 U. S. 42, 89 L. Ed. 739, 65 S. Ct. 517; *Avery v. Alabama,* 308 U. S. 444, 84 L. Ed. 377, 60 S. Ct. 321; *Powell v. Alabama,* 287 U. S. 45, 77 L. Ed. 158, 53 S. Ct. 55. Mr. Justice Jackson stated in a separate opinion in *Watts v. Indiana,* 338 U. S. 49, 93 L. Ed. 1801, 69 S. Ct. 1347, 1357, as follows:

"If the State may arrest on suspicion and interrogate without counsel, there is no denying the fact that it largely negates the benefits of the constitutional guaranty of the right to assistance of counsel. Any lawyer who has ever been called into a case after his client has 'told all' and turned any evidence he has over to the Government, knows how helpless he is to protect his client against the facts thus disclosed."

Thus, as a consequence of police interrogations and procedures which result in the accused making an incriminating statement before he is allowed to consult with counsel, a lawyer's subsequent efforts, despite eminent ability and diligent application, inevitably lack effectiveness.[3]

In *Ex parte Sullivan,* 107 F. Supp. 514, two accused persons requested counsel upon arrest and ensuing interroga-

---

[2]In *Thorne v. Callahan,* 39 Wn. (2d) 43, 234 P. (2d) 517, this court held that a denial of counsel, which resulted in unfairness to the accused, was a denial of due process.

[3]In *State v. Phillips,* 59 Wash. 252, 109 Pac. 1047, this court held:

". . . The aid of counsel is guaranteed by the constitution to every person accused of crime, and this is universally recognized as one of the surest safeguards against injustice and oppression. Any conduct or statement on the part of the court that tends to impair the influence or destroy the usefulness of counsel is palpable and manifest error. . . ."

Certainly, such holding is applicable to any official acts, whether during or before trial, which impair the usefulness of counsel.

tion. Counsel was denied them. Incriminating statements made during the interrogation period were admitted in evidence in a state court. The conviction was a denial of due process. The court held:

"... unquestionably Petitioners were entitled to have effective counsel *at the trial.* The question here is how they ever could have had effective counsel at the trial, no matter how skilled, in view of what went on before trial. They were denied effective counsel at the trial itself because of what went on before trial while the defendants were without counsel, and absolutely under the control of the prosecution."

Former United States Circuit Judge Justin Miller, when Dean of the Duke University Law School, in his discussion entitled "Lawyers and the Administration of Criminal Justice," 20 American Bar Jour. 77 (1934), declared:

"... Although competent counsel is of great value at that time, the time when an accused person really needs the help of a lawyer is when he is first arrested and from then on until trial. The intervening period is so full of hazards for the accused person that he may have lost any legitimate defense, long before he is arraigned and put on trial. ..."[4]

*Von Moltke v. Gillies,* 332 U. S. 708, 92 L. Ed. 309, 68 S. Ct. 316, teaches that prior to trial an accused is entitled to rely upon counsel to make an independent examination of the facts and the applicable law without which an informed

[4]See 44 Ky. L. Jour. 103, Criminal Procedure—Right to Counsel Prior to Trial, wherein it is said:

"If at any time, from the time of his arrest to final determination of his guilt or innocence, an accused really needs the help of an attorney, it is in the pre-trial period. ... Indeed, the pre-trial period is so full of hazards for the accused that, if unaided by competent legal advice, he may lose any legitimate defense he may have long before he is arraigned and put on trial. ..."

In a concurring opinion in *Spano v. New York,* 360 U. S. 315, 3 L. Ed. (2d) 1265, 79 S. Ct. 1202, Chafee, Documents on Fundamental Human Rights, pamphlet 2 (1951-1952), p. 541, is quoted as follows:

" '... A person accused of crime needs a lawyer right after his arrest probably more than at any other time. ...' "

See, also, Orfield, Criminal Procedure From Arrest to Appeal, chapter 1, § 23, p. 43 (1947).

judgment is impossible.[5] This appellant groped in the dark, misled by his prosecutors. While perhaps this is not coercion, resort to speculation is unnecessary to know that one learned in the law would have advised that "silence is golden" and that he had a constitutional right not to speak.

*State v. Levy,* 8 Wn. (2d) 630, 113 P. (2d) 306, approved the statement made in *State v. Manderville,* 37 Wash. 365, 79 Pac. 977, and *State v. Dale,* 115 Wash. 466, 197 Pac. 645:

" 'Where an error is made which violates a constitutional provision, the judgment in a criminal case will ordinarily be reversed without a showing that said error did prejudice the rights of the defendant, unless the facts and circumstances be such that it affirmatively appears that such defendant was not, and could not have been, injured thereby.' . . ."

*Glasser v. United States,* 315 U. S. 60, 86 L. Ed. 680, 62 S. Ct. 457, held:

" . . . The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial. . . ."

In *Powell v. Alabama, supra,* the supreme court of the United States said:

" . . . Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare

---

[5]This court has held that even where it appeared to the court that " . . . the issues of fact and law were comparatively simple," counsel, nevertheless, had the duty "to make a full and complete investigation of both the facts and the law in order to advise his client and prepare adequately and efficiently to present any defenses he might have to the charges against him. . . ." *State v. Hartwig,* 36 Wn. (2d) 598, 219 P. (2d) 564.

The services of a lawyer even in such a situation are deemed indispensable and the time needed for adequate and effective preparation must be granted. .

his defense, even though he have a perfect one. *He requires the guiding hand of counsel at every step in the proceedings against him. . . .* If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect. . . ." (Italics mine.) [6]

In *Crooker v. California, supra,* the conviction was affirmed because the accused was an intelligent college graduate with a law school training, which included criminal law and evidence, who knew that he could rightfully refuse to speak. The present circumstances are the reverse. The appellant's education was not only limited, but his intelligence fails to rise above mediocrity and his knowledge of the law is a minus factor. His timely request for counsel was denied until such assistance was pointless. Such was denial of a constitutional right, and prejudice is presumed. *Butzman v. United States,* 205 F. (2d) 343; *Williams v. Kaiser,* 323 U. S. 471, 89 L. Ed. 398, 65 S. Ct. 363; *Glasser v. United States, supra; Jablonowski v. New Jersey,* 29 N. J. Super. 109, 102 A. (2d) 56.

In *Watts v. Indiana, supra,* the supreme court of the United States held:

" . . . To turn the detention of an accused into a process of wrenching from him evidence which could not be extorted in open court with all its safeguards, is so grave an abuse of the power of arrest as to offend the procedural standards of due process." [7]

---

[6] As was stated by Mr. Justice Douglas, dissenting, in *Bute v. Illinois,* 333 U. S. 640, 92 L. Ed. 986, 68 S. Ct. 763:

" . . . The reason is that the guilty as well as the innocent are entitled to a fair trial, that a layman without the experience and skill of counsel to guide him may get lost in the intricacies of the law and lose advantages which it extends to every accused, that without expert appraisal of the circumstances surrounding his arrest, detention, arraignment, and conviction the penalties he suffers may be aggravated by his own ignorance or by overreaching of the prosecution or police. . . ."

[7] In *Spano v. New York, supra,* the United States supreme court reversed a state court conviction where " . . . The police were not . . . merely trying to solve a crime, or even to absolve a suspect. . . . They were rather concerned primarily with securing a statement from defendant on which they could convict him. The undeviating intent of the officers to extract a confession from petitioner is therefore

A fundamental lack of fairness fatal to due process results.

But there is another and more compelling reason for excluding the confession. RCW 9.33.020(5) is as follows:

"No officer or person having the custody and control of the body or liberty of any person under arrest, *shall refuse permission to such arrested person to communicate with his friends or with an attorney,* nor subject any person under arrest to any form of personal violence, intimidation, indignity or threats for the purpose of extorting from such person incriminating statements or a confession. Any person violating the provisions of this section shall be guilty of a misdemeanor." (Italics mine.)

The undeniable facts disclosed by this record show a violation of the statute. Appellant was not charged until after the confession was signed, the day following his arrest, during which time his every request to communicate with the outside world was denied. In that interval, he was not advised of his right to refuse to talk to the police.

The statute is violated if, for the purpose of extorting a confession, the person under arrest is denied permission to communicate with friends or an attorney. The instruction is set out in the margin.[8] The statute does not require that the purpose must have been successful, that is, that the

---

patent. . . ." Such was held to be a major consideration in the court's reasons for reversal.

In *Chalmers v. H. M. Advocate,* 1954 Sess. Cas. (Ct. Just.) 66, 78, the Court held:

". . . The theory of our law is that at the stage of initial investigation the police may question anyone with a view to acquiring information which may lead to the detection of the criminal; but that, when the stage has been reached at which suspicion, or more than suspicion, has in their view centred upon some person as the likely perpetrator of the crime, further interrogation of that person becomes very dangerous, and, if carried too far, *e.g.,* to the point of extracting a confession by what amounts to cross-examination, the evidence of that confession will almost certainly be excluded. . . ."

[8]"You are instructed that Subdivision 5 of Section R.C.W. 9.33.020 reads as follows:

" 'No officer or person having the custody and control of the body or liberty of any person under arrest, shall refuse permission to such arrested person to communicate with his friends or with an attorney, nor subject any person under arrest to any form of personal violence,

confession be actually extorted through the denial of counsel. Denial of the right to communicate for that purpose is sufficient and an added element that the confession must, in fact, have been induced by such action denudes the statute.

Therefore, "voluntariness" is not material, for by the plain terms of the statute the question is whether the accused was denied permission to communicate with friends or counsel and whether the purpose of such refusal was to obtain an incriminating statement or confession.

It is not difficult to determine why his repeated requests for outside communication were denied, nor why his wife was refused permission to see him on her visit to the jail for that purpose prior to the confession. Detention without charge is a time-honored method for keeping an accused under the exclusive control of the police who are thereby able to operate at their leisure while the accused is at their mercy. *Reck v. Pate, supra.*

The postconfession events are equally germane to the preconfession exploits in consideration of the question of whether the police conduct and purpose was in violation of the statute, because a callous disregard by police of appellant's constitutional and statutory rights is manifested.

*Haley v. Ohio, supra,* held:

" . . . It is said that these events are not germane to the present problem because they happened after the confession was made. But they show such a callous attitude of the police towards the safeguards which respect for ordinary standards of human relationships compels that we take with a grain of salt their present apologia that the five-hour grilling of this boy was conducted in a fair and dispassionate manner. When the police are so unmindful of these basic standards of conduct in their public dealings, their secret treatment of a 15-year-old boy behind closed doors in the dead of night becomes darkly suspicious.

---

intimidation, indignity or threats for the purpose of extorting from such person incriminating statements or a confession.'

"If you find from the evidence in this case that any officer having custody of either defendant in this case denied him communication with his friends or an attorney in violation of the above statute, then I instruct you that you may consider such denial in connection with the voluntariness of any statement made." Instruction No. 12.

" . . . Formulas of respect for constitutional safeguards cannot prevail over the facts of life which contradict them. . . ."

The state's answer is that, if the police violated the statute, the guilty should be punished; but that overlooks the fundamental purpose of the statute itself which is to prohibit a denial of communication with friends or counsel. The state should not be permitted to offer in evidence a confession obtained by the unlawful conduct of the police. Public policy forbids.[9]

The proper rule of law to be applied under the circumstances of this record is the one applied in the unlawful search and seizure cases.[10] *State v. Buckley,* 145 Wash. 87, 89, 258 Pac. 1030, said:

"It is the rule of the English courts, and is the rule of the courts in a majority of the American states, that the admissibility of evidence is not affected by the manner in which, the means by which, or the source from which, it is obtained. It is held that, if the evidence is otherwise pertinent to the issue, it is no valid objection to its admissibility to show that it was unlawfully or illegally obtained. See the note of Mr. Freeman to *State v. Turner,* 82 Kan. 787, 109 Pac. 654, 136 Am. St. 129, 135. The highest court of the land, however, has uniformly followed a contrary rule. It has said, in no uncertain language, that it is beneath the dignity of the state, and contrary to public policy, for the state to use for its own profit evidence that has been obtained in violation of law. *Boyd v. United States,* 116 U. S. 616; *Weeks v. United States,* 232 U. S. 383; *Silverthorne*

---

[9]In *Spano v. New York, supra,* the supreme court of the United States expressed " . . . the deep-rooted feeling that the police must obey the law while enforcing the law; that in the end life and liberty can be as much endangered from illegal methods used to convict those thought to be criminals as from the actual criminals themselves. . . ." This view was reiterated most recently in *Blackburn v. Alabama,* 361 U. S. 199, 4 L. Ed. (2d) 242, 80 S. Ct. 274.

Denning, Freedom Under the Law (1949), chapter 1, p. 3, 26, observed: "It is just as important that the police should be honest and fair in all their dealings as that judges should be."

[10]*Mapp v. Ohio,* 367 U. S. 643, 6 L. Ed. (2d) 1081, 81 S. Ct. 1684 (June 19, 1961), decided that the exclusionary rule of *Weeks v. United States,* 232 U. S. 383, 58 L. Ed. 652, 34 S. Ct. 341, was applicable to criminal prosecutions in state courts.

*Lumber Co. v. United States,* 251 U. S. 385; *Gouled v. United States,* 255 U. S. 298; *Amos v. United States,* 255 U. S. 313; *Agnello v. United States,* 269 U. S. 20. We have ourselves followed the Federal rule. *State v. Gibbons,* 118 Wash. 171, 203 Pac. 390; *State v. Dersiy,* 121 Wash. 455, 209 Pac. 837; *State v. Smathers,* 121 Wash. 472, 209 Pac. 839."

Other cases are collected in the margin.[11]

Instruction No. 11[12] was clearly erroneous because it told the jury without reservation that a confession was not rendered involuntary because the accused was not reminded that he was under arrest, that he was not obliged to reply, that his answer would be used against him, nor that he was entitled to be represented by counsel; while the law is that

[11]*State v. Miles,* 29 Wn. (2d) 921, 190 P. (2d) 740; *Tacoma v. Houston,* 27 Wn. (2d) 215, 177 P. (2d) 886; *State v. Gunkel,* 188 Wash. 528, 63 P. (2d) 376; *State v. Knudsen,* 154 Wash. 87, 280 Pac. 922.

[12]"By statute of the State of Washington, it is provided:

" 'The confession of a defendant made under inducement, with all the circumstances, may be given as evidence against him, except when made under the influence of fear produced by threats; but a confession made under inducement is not sufficient to warrant a conviction without corroborating testimony.'

"You are further instructed that a 'voluntary confession' is taken to mean a confession made of the free will and accord of the defendant without over-persuasion, and without coercion induced by fear or threat of harm and without inducement by promising or holding out hope of reward or immunity; or, stated in another way, a confession which is forced or extorted in any manner by over-persuasion, promise or threats is an involuntary confession.

"The same rule applies to oral admissions made by one accused of crime.

"If you believe from the evidence in this case beyond a reasonable doubt that either defendant made any confession or oral admission, then you are instructed to disregard any such confession or admission unless you further find from the evidence beyond a reasonable doubt that such confession or admission, if any, was voluntarily made.

"And in this connection, I further instruct you that a confession or admission of a defendant is not rendered involuntary because he is not at the time of making the same reminded that he was under arrest, or that he was not obliged to reply, or that his answers would be used against him, or that he was entitled to be represented by counsel.

"If you find that confessions or oral admissions were made, and were voluntarily made by the defendants, then it is your province to determine the weight and credit to be given them." Instruction No. 11.

such circumstances are to be considered in determining whether the confession is voluntary or involuntary.[13]

The approved instruction was summarized in *Stroble v. California,* 343 U. S. 181, 189, 96 L. Ed. 872, 72 S. Ct. 599, as follows:

"The trial court charged the jury that it could not consider a confession unless it was voluntary; that the jury was the sole judge of voluntariness; and that a confession was not voluntary when obtained by any kind of violence, abuse, or threat, or by 'any coaxing, cajoling, or menacing influence which induces in the mind of the defendant the belief or hope that he will gain some advantage by making a confession.' The court further charged that the fact that a confession is made while an accused is under arrest and being detained, or when he is not represented by counsel, or without his having been told that any statement he makes may be used against him, does not in itself make the confession involuntary, *but is one circumstance to be considered in determining the voluntariness of the confession. . . .*" (Italics mine.)

Again we are admonished by *Rogers v. Richmond,* 365 U. S. 534, 5 L. Ed. (2d) 760, 81 S. Ct. 735, that ours is an accusatorial and not an inquisitorial system. The court there said:

"Our decisions under that Amendment have made clear that convictions following the admission into evidence of confessions which are involuntary, *i.e.,* the product of coercion, either physical or psychological, cannot stand. This is so not because such confessions are unlikely to be true but because the methods used to extract them offend an underlying principle in the enforcement of our criminal law: that ours is an accusatorial and not an inquisitorial

---

[13]"While in custody and before he was taken before a magistrate, Strain asked the officers for permission to see a lawyer. He was told he would have plenty of time to see one. He was not permitted to see one. The refusal of a request to see a lawyer by a person under arrest and before he is taken before a magistrate is not, in itself, ground for denying admission of such person's confession in evidence. Nor does it result in a denial of his fundamental rights. It is a factor to be considered by the jury in determining whether the confession was voluntary. (*People v. Crooker, supra,* 47 Cal. 2d 348, 352–353; *Crooker v. California, supra,* 357 U. S. 433 [78 S. Ct. 1287, 2 L. Ed. 2d 1448, 1453].)" *People v. Grace,* 166 Cal. App. (2d) 68, 332 P. (2d) 811.

system—a system in which the State must establish guilt by evidence independently and freely secured and may not by coercion prove its charge against an accused out of his own mouth. See *Chambers v. Florida,* 309 U. S. 227; *Lisenba v. California,* 314 U. S. 219, 236; *Rochin v. California,* 342 U. S. 165, 172-174; *Spano v. New York,* 360 U. S. 315, 320-321; *Blackburn v. Alabama,* 361 U. S. 199, 206-207. And see *Watts v. Indiana,* 338 U. S. 49, 54-55. . . ."

Rogers' lawyer was not allowed to confer with him because the coroner had prohibited all communication with the prisoner. Rogers himself was likewise denied the right to see counsel.

The conviction was affirmed by the Connecticut supreme court—not because the confession was voluntary, but because it was true.

The United States supreme court reversed because the Connecticut courts applied the wrong test.

" . . . The employment instead, by the trial judge and the Supreme Court of Errors, of a standard infected by the inclusion of references to probable reliability resulted in a constitutionally invalid conviction, pursuant to which Rogers is now detained 'in violation of the constitution.' A defendant has the right to be tried according to the substantive and procedural due process requirements of the Fourteenth Amendment. This means that a vital confession, such as is involved in this case, may go to the jury only if it is subjected to screening in accordance with correct constitutional standards. To the extent that in the trial of Rogers evidence was allowed to go to the jury on the basis of standards that departed from constitutional requirements, to that extent he was unconstitutionally tried and the conviction was vitiated by error of constitutional dimension."

Here the jury was given a wrong test for determining the admissibility of a confession. The law is that, in determining whether the confession was involuntary or voluntary, the jury is entitled to consider whether the appellant was advised that he need not answer, or that, if he did, his admissions would be used against him, or that he was entitled to consult counsel before answering; whereas, the court instructed that such circumstances did not render the confession involuntary.

The state's argument that the conviction should be sustained, because, independent of the confession, there was ample proof of guilt, is untenable. Upon appeal, the issue is whether the appellant's constitutional rights have been infringed. His guilt or innocence is for the jury's determination exclusively.

The proofs of guilt, which are said to be sufficient to sustain a conviction, were all known to the police prior to the confession, which furnishes all the more reason appellant should have been promptly charged with the crime and a preliminary hearing before a magistrate held. But the desire to wrap up the case with a confession was irresistible, and the unconstitutional course of conduct was pursued.

If an incompetent confession has been admitted, the conviction will be set aside by the nation's supreme court even though the evidence, apart from the confession, was sufficient. *Payne v. Arkansas,* 356 U. S. 560, 2 L. Ed. (2d) 975, 78 S. Ct. 844; *Brown v. Allen,* 344 U. S. 443, 97 L. Ed. 469, 73 S. Ct. 397, 437; *Malinski v. New York,* 324 U. S. 401, 89 L. Ed. 1029, 65 S. Ct. 781; *Lyons v. Oklahoma,* 322 U. S. 596, 88 L. Ed. 1481, 64 S. Ct. 1208.

I would reverse the judgment and order a new trial with directions to exclude the confession if offered.

ROSELLINI, J., concurs with FOSTER, J.

WEAVER, J. (dissenting)—I concur in the result of Judge Foster's dissent that grants a new trial, with directions to exclude the confession if offered.

My reasons are expressed in that portion of the dissenting opinion that discusses the violation, by the police, of RCW 9.33.020(5).

DONWORTH, J. (dissenting)—The test laid down by the United States Supreme Court in its most recent decision on the subject of the admissibility of confessions (*Culombe v. Connecticut,* 367 U. S. 568, 6 L. Ed. (2d) 1037, 81 S. Ct. 1860) is as follows:

" . . . The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process. *Rogers v. Richmond,* 365 U. S. 534. The line of distinction is that at which governing self-direction is lost and compulsion, of whatever nature or however infused, propels or helps to propel the confession."

The record in this case, viewed as a whole, convinces me that the confession of appellant was involuntary and should not have been admitted into evidence because not only was an arrested man denied the right to call an attorney or his wife (in clear violation of RCW 9.33.020(5), set out in the majority opinion), but the officers having his custody made it clear to him that they would continue to hold him incommunicado until he "co-operated" by signing a statement admitting his guilt. His requests for permission to contact his wife were repeatedly denied. His wife was also prohibited from seeing him or talking with him on the telephone during a period of about a week after his arrest. All of the above facts were undisputed at the trial.

In this case the state has admitted facts which, as a matter of law, make the confession involuntary and inadmissible if that confession is a result of those facts. Unless there is evidence to the contrary, a confession arising out of such coercive circumstances must be held to be a result of those circumstances, and, hence, involuntary.

On a new trial the state, of course, is not precluded from attempting to show that the confession was, in fact, voluntary. See *Turner v. Pennsylvania,* 338 U. S. 62, 93 L. Ed. 1810, 69 S. Ct. 1352. However, as the record now stands, the burden of proof is upon the state, and that burden is a heavy one, for the state has to show that the confession would have been made even if appellant had not been prevented from contacting "friends or an attorney" (*i.e.,* even if the officers had not violated the statute). No evi-

dence was offered at the first trial which would tend to prove that the confession was not a result of the circumstances described above. Therefore, there was no issue of fact for the jury to determine, and the trial judge erred as a matter of law in admitting the confession into evidence and submitting the issue of voluntariness to the jury.

I would reverse the judgment and sentence and remand the case for a new trial, wherein, if the confession were again offered, in my opinion, it should be dealt with in accordance with Rule of Pleading, Practice and Procedure 101.20W, RCW Vol. 0, as last amended, effective January 2, 1961.

November 8, 1961. Petition for rehearing denied.